Susan M. WYMAN, et al., Appellants,

v.

**MISSOURI DEPARTMENT OF MENTAL HEALTH, et al.,** Respondent.

No. WD 74062.

Missouri Court of Appeals, Western District.

April 10, 2012.

Thad R. Mulholland, Columbia, MO and Douglas L. Van Camp, Jefferson City, MO, for appellant.

Joanna Trachtenberg, Jefferson City, MO, for respondent.

Before: LISA WHITE HARDWICK, C.J., ALOK AHUJA, J., and JON BEETEM, Sp. J.

ALOK AHUJA, Judge.

Susan Wyman and fifteen other current or former employees at the Fulton State Hospital (collectively "Wyman") filed suit in the Circuit Court of Callaway County against the Missouri Department of Mental Health and Marty Martin–Foreman, the Chief Operating Officer of the Hospital. Wyman's petition alleges that the Department, through the actions of Martin–Foreman, retaliated against the plaintiffs for filing workers' compensation claims, or otherwise exercising their rights under the Workers' Compensation Law. The alleged retaliatory acts included demotion and job reassignments, which were allegedly part of a pattern of harassment, intimidation, and coercion. The petition sought damages on behalf of each plaintiff, and also prayed for injunctive relief "enjoin[ing] Defendant Department of Mental Health from removing and/or relocating employees that exercise his/her rights under the Missouri Workers' Compensation Law, and to reinstate any and all persons, including but not limited to Plaintiffs, who have been discriminated against for exercising his/her rights under the Workers' Compensation Law."

The Department and Martin–Foreman moved to dismiss the petition on the basis of sovereign immunity. The trial court granted the motion. Wyman appeals. We conclude that civil actions seeking monetary relief against the Department, for retaliation against employees for their exercise of workers' compensation rights, are barred by sovereign immunity. Wyman's claims against Martin–Foreman fail because Martin–Foreman, individually, is not an "employer" under the Workers' Compensation Law. We also conclude, however, that sovereign immunity does not necessarily foreclose equitable relief, and that the trial court erred in dismissing Wyman's claim for injunctive relief on immunity grounds. The circuit court's judgment is accordingly affirmed in part and reversed in part, and remanded for further proceedings.

## Standard of Review

A motion to dismiss for failure to state a claim is solely a test of the adequacy of the plaintiff's petition. A court reviews the petition in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case. The court treats the plaintiff's averments as true and liberally grants the plaintiff all reasonable inferences. The credibility or persuasiveness of the facts alleged are not weighed. Appellate review of a trial court's grant of a motion to dismiss is de novo.

Edoho v. Bd. of Curators of Lincoln Univ., 344 S.W.3d 794, 797 (Mo.App. W.D.2011) (citations and internal quotations omitted). In addition, the existence of sovereign immunity, and questions of statutory interpretation, are issues of law which we review de novo. Kelly v. Marvin's Midtown Chiropractic, LLC, 351 S.W.3d 833, 835 (Mo.App. W.D.2011); Ogden v. Iowa Tribe of Ks. and Neb., 250 S.W.3d 822, 824 (Mo. App. W.D.2008).

## Analysis

### I.

Wyman first argues that the circuit court erred in dismissing her compensatory-damage claims against the Department because its sovereign immunity is waived

by Missouri's Workers' Compensation Law, chapter 287, RSMo (the "Act").[1]

Wyman's retaliatory discharge claims against the Department are based on § 287.780,[2] which provides:

No employer or agent shall discharge or in any way discriminate against any employee for exercising any of his rights under this chapter. Any employee who has been discharged or discriminated against shall have a civil action for damages against his employer.

■ Wyman does not dispute that her retaliatory discharge claim against the Department seeks to impose tort liability upon it. *See Cook v. Hussmann Corp.,* 852 S.W.2d 342, 344 (Mo. banc 1993) (" § 287.780 created a judicially cognizable independent tort"); *State ex rel. Rival Co. v. Gant,* 945 S.W.2d 475, 477 (Mo.App. W.D.1997) (same). Her retaliatory discharge claim therefore implicates the State's sovereign immunity from tort liability, which is codified in § 537.600.1:

Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated

or modified by statutes in effect prior to that date, shall remain in full force and effect.... [3]

"Section 537.600 ... provides that the doctrine of sovereign immunity remains the general rule in Missouri protecting public entities from liability for negligent acts." *Langley v. Curators of Univ. of Mo.,* 73 S.W.3d 808, 811 (Mo.App. W.D.2002) (citations and internal quotation marks omitted). "[A] public entity with the status of a governmental body ... is immune from suit for liability in tort in the absence of an express statutory provision. Liability of a political subdivision for torts is the exception to the general rule of sovereign immunity...." *Id.*

■ In the absence of an express waiver in a particular statute, a state agency generally has sovereign immunity from common-law tort actions in all but three circumstances: negligent operation of a motor vehicle, § 537.600.1(1); a dangerous condition on public property, § 537.600.1(2); and where the entity has purchased liability insurance (but only to the extent of the policy's coverage), § 537.610. *Bennartz v. City of Columbia,*

1. Because Wyman's petition was required to affirmatively allege that her claims fell within an exception to the Department's sovereign immunity, the sovereign immunity issue was properly raised by a motion to dismiss. "The liability of a public entity for torts is the exception to the general rule of immunity for tort and it is incumbent upon a plaintiff who seeks to state a claim for relief to specifically allege facts establishing that an exception applies." *Boever v. Special Sch. Dist. of St. Louis Cnty.,* 296 S.W.3d 487, 491 (Mo.App. E.D.2009) (citation and internal quotation marks omitted); *see also Shifflette v. Mo. Dep't of Natural Res.,* 308 S.W.3d 331, 334 (Mo.App. W.D.2010) ("Sovereign immunity is not an affirmative defense but is part of the plaintiff's *prima facie* case."); *Richardson v. City of St. Louis,* 293 S.W.3d 133, 137 (Mo. App. E.D.2009) ("Missouri courts have routinely held that sovereign immunity is not an

affirmative defense and that the plaintiff bears the burden of pleading with specificity facts giving rise to an exception to sovereign immunity when suing a public entity.").

2. Unless otherwise indicated, statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, as updated through the 2011 Cumulative Supplement.

3. On September 12, 1977, the Missouri Supreme Court abrogated the doctrine of sovereign immunity. *Jones v. State Hwy. Comm'n,* 557 S.W.2d 225, 229 (Mo. banc 1977). The legislature in turn abrogated *Jones,* and "reestablished the [sovereign immunity] doctrine in modified form" by enacting §§ 537.600–537.650 in 1978. *See Southers v. City of Farmington,* 263 S.W.3d 603, 609 n. 5 (Mo. banc 2008).

300 S.W.3d 251, 259 (Mo.App. W.D.2009).[4] None of these exceptions apply here.

■■■ Wyman claims that the Workers' Compensation Law itself waives the State's sovereign immunity from retaliatory discharge claims. She cites § 287.030, which defines "employer" to include "[t]he state." Because the State is included in the definition of an "employer" under the Act, and because § 287.780 expressly recognizes "a civil action for damages against [the aggrieved worker's] employer," Wyman argues that the Act explicitly provides a cause of action against the State for retaliatory discharge.

We are unpersuaded. The Workers' Compensation Law is not the only statute addressing the degree to which the State and its employees are subject to the Act. Sections 105.800 through 105.850 specify the manner in which state employees are to be made subject to the Workers' Compensation Law. Section 105.810 provides

that "[t]he provisions of chapter 287, RSMo, governing workers' compensation are extended to include all state employees," and specifies the manner in which the State will insure its workers' compensation liability, and fund claim-related expenses. *See also* § 105.820 (specifying the officials within particular agencies who are responsible for implementing the provisions of §§ 105.800 to .850); § 105.830 (specifying that "every employee of each department and agency shall be covered by the provisions of chapter 287, RSMo"). Section 105.850 then provides:

> Nothing in sections 105.800 to 105.850 shall ever be construed as acknowledging or creating any liability in tort or as incurring other obligations or duties except only the duty and obligation of complying with the provisions of chapter 287, RSMo.[5]

Section 105.850 has been interpreted in two prior cases as preserving the State's

---

4. As *Bennartz* recognizes, municipalities are also subject to suit in a fourth situation: where they are performing a proprietary, rather than governmental, function. 300 S.W.3d at 259. This governmental-proprietary distinction does not apply to the sovereign immunity of the State. *Southers v. City of Farmington*, 263 S.W.3d 603, 609 (Mo. banc 2008).

 We note that Wyman makes no argument that sovereign immunity should be inapplicable here due to the nature of the tort alleged. *See Brooks v. City of Sugar Creek*, 340 S.W.3d 201, 207–08 (Mo.App. W.D.2011); *Bennartz*, 300 S.W.3d at 263–64 (Pfeiffer, J., concurring).

5. Although not argued by either party, and although it would not affect the outcome of this appeal, we note that § 105.850 may not be applicable to the Department of Mental Health. Section 105.830 provides that "[n]othing in sections 105.800 to 105.850 shall affect any department or constitutional agency which is already under the provisions of chapter 287." Prior to the enactment of §§ 105.800–105.850 in 1969, the Department

of Mental Health, and its predecessor the Division of Mental Diseases and State Hospitals, had been made subject to the Workers' Compensation Law. *See* § 202.024, RSMo 1957, 1969. A similar provision continues to exist, now codified at § 630.070. Based in part on § 105.830, and the pre-existing legislation making the Department subject to the Act, the Attorney General concluded in 1971 that the Department of Mental Health was not subject to the provisions of §§ 105.810 and 105.820, which give state agencies the option to either acquire insurance for workers' compensation liabilities, or instead self-insure. Op. Mo. Att'y Gen. No. 72 (Feb. 23, 1971) (Danforth). The Attorney General Opinion's analysis would suggest that § 105.850 is likewise inapplicable to the Department. Even if § 105.850 is not literally applicable to the Department of Mental Health, however, the statute specific to the Department contains a provision similar to § 105.850. *See* § 630.070.3; *see also* § 202.025, RSMo 1957, 1969, 1978 (predecessor provisions). Wyman offers no reason why § 630.070.3 should be read differently than § 105.850, and we perceive none.

sovereign immunity against workers' compensation retaliatory discharge claims, despite the fact that the State is otherwise made subject to the provisions of the Workers' Compensation Law. In *Krasney v. Curators of the University of Missouri*, 765 S.W.2d 646 (Mo.App. W.D.1989), this Court held that the inclusion of "the state" in the definition of an "employer" in § 287.030 was insufficient to establish a waiver of sovereign immunity, because—according to *Krasney*—"[t]he waiver of sovereign immunity ... must be by express consent to be sued." *Id.* at 650. This aspect of *Krasney* may be questionable in light of *Bachtel v. Miller County Nursing Home District*, 110 S.W.3d 799 (Mo. banc 2003).[6] Be that as it may, *Krasney* went on to hold that the claimed sovereign-immunity waiver was "even more conclusively rebutted by an express legislative disclaimer," namely § 105.850. 765 S.W.2d at 650. After quoting the provision, *Krasney* held that "[t]his declaration means that, any intimations to the contrary notwithstanding, none of the provisions of the Workers Compensation Law shall be construed as a waiver of sovereign immunity in favor of a state employee." *Id.*

In *King v. Probate Division, Circuit Court of County of St. Louis*, 958 S.W.2d 92 (Mo.App. E.D.1997), the Eastern District reaffirmed the result in *Krasney*, despite the plaintiff's contention that § 105.850 should be read as a waiver of the State's sovereign immunity for retaliatory discharge claims founded on the Workers' Compensation Law. The Court explained:

Plaintiff would have us read Section 105.850 so that the phrase "except only the duty and obligation [of complying with the provisions of chapter 287, RSMo]" would follow and modify the word "tort." The structure and meaning of the sentence do not allow such a reading. The word "tort" is followed by the words "or as incurring other obligations or duties." The phrase "except only the duty and obligation" follows this phrase and specifically modifies and makes an exception to "other obligations or duties," not to the word "tort." Under this section the state has the duty and obligation to comply with the provisions of Chapter 287, but has not waived tort liability in connection therewith.

*Id.* at 93.[7]

 Like the plaintiff in *King*, Wyman asks us to refuse to follow the earlier

---

6. *Bachtel* explained that

[n]othing in the statutes or case law requires that certain magic words must be used in order to waive sovereign immunity. The case law ... merely requires that the intent of the legislature to waive sovereign immunity must be express rather than implied. While the most common way to express that intent may be to specifically state that sovereign immunity is waived, the legislature also expresses its intent through other language.

110 S.W.3d at 804. In *Bachtel*, the Supreme Court held that sovereign immunity was waived where (1) the relevant statutes created a private right of action for nursing home employees who were retaliated against for reporting abuse or neglect of residents, and (2) the statutes were made generally applica-

ble to nursing home districts (which would otherwise be entitled to sovereign immunity). *Id.* at 805; *see also Otte v. Mo. State Treasurer*, 141 S.W.3d 74, 76 (Mo.App. E.D.2004) ("In *Bachtel*, ... the court found that sovereign immunity was waived by statutory language that created a private right [of] action and defined the state agency being sued as being subject to the act.").

7. *King*'s construction of § 105.850 represents an application of the " 'the last antecedent rule,' which instructs that: relative and qualifying words, phrases, or clauses are to be applied to the words or phrase immediately preceding and are not to be construed as extending to or including others more remote.' " *Rothschild v. State Tax Comm'n*, 762 S.W.2d 35, 37 (Mo. banc 1988).

decisions addressing this specific sovereign-immunity issue. Wyman argues that *Krasney* and *King* are no longer good law in light of the 2005 amendments to the Act, and specifically the amendment to § 287.800, which now provides that "reviewing courts shall construe the provisions of this chapter strictly" (unlike the earlier statute, which directed that "[a]ll of the provisions of this chapter shall be liberally construed with a view to the public welfare ...," § 287.800, RSMo 2000). As we have recently explained, "[s]trict construction means that a statute can be given no broader application than is warranted by its plain and unambiguous terms." *Robinson v. Hooker*, 323 S.W.3d 418, 423 (Mo.App. W.D.2010); *see also, State ex rel. KCP & L Greater Mo. Operations Co. v. Cook*, 353 S.W.3d 14, 20 (Mo.App. W.D. 2011) (en banc). Wyman argues that, because the definition of "employer" under the Act explicitly includes "the state," and the statute provides for a cause of action against all "employers," there must be a cause of action against the State; she contends that the canon of strict construction prevents us from recognizing an unstated exemption from the cause of action created by § 287.780. This argument fails, however, to address § 105.850, which both *King* and *Krasney* interpreted as preserving the State's sovereign immunity against tort claims, including tort claims for retaliatory discharge based on § 287.780. Section 287.800's strict-construction principle has no application to § 105.850.

Wyman also argues that, because the term "sovereign immunity" is not used in § 105.850, that section should not be construed to preserve the State's sovereign immunity, which (she contends) would otherwise be waived by the provisions of chapter 287. Both *King* and *Krasney* interpreted § 105.850 as expressly preserving the State's sovereign immunity, however, and the Supreme Court has interpreted

§ 105.850 in the same manner. *Jones v. State Hwy. Comm'n*, 557 S.W.2d 225, 229 (Mo. banc 1977) ("§ 105.850, RSMo 1969 ... contain[s] [a] disclaimer provision[ ] that [it] shall not be construed as a waiver of sovereign immunity").

Wyman also relies on *Bachtel v. Miller County Nursing Home District*, 110 S.W.3d 799 (Mo. banc 2003), in which the Supreme Court held that the legislature did not have to use "magic words" in order to waive sovereign immunity. *Id.* at 804. *Bachtel* held that specific words, such as "the defense of sovereign immunity is waived," need not be used, *id.*; instead, it is the intent to waive, rather than the language of the waiver itself, that must be express. *Id.* Here, however, § 105.850 has previously been construed to express an *affirmative intent to preserve* the State's sovereign immunity. *Krasney* and *King*'s construction of § 105.850 was not based on the view that it failed to adequately express an *intent to waive* immunity. *Bachtel* does not aid Wyman here.

The trial court correctly held that Wyman's damages claims against the Department, for retaliation in violation of § 287.780, were barred by sovereign immunity, and that dismissal of those claims was warranted.

## II.

▮ Wyman next contends that, even if sovereign immunity applies to her *damages* claims against the Department, her claim for *equitable relief* is not similarly barred.

The final count of Wyman's petition alleged that the Department was engaged in a pattern of removing and/or relocating workers who exercised rights under the Workers' Compensation Law. It sought injunctive relief that would (1) prohibit the Department "from removing and/or relo-

cating employees that exercise his/her rights under the Missouri Workers' Compensation Law," and (2) order the Department "to reinstate any and all persons, including but not limited to Plaintiffs, who have been discriminated against for exercising his/her rights under the Missouri Workers' Compensation Law."

The sole basis on which the Department moved for dismissal of the injunction claim was the sovereign immunity recognized in § 537.600; in seeking dismissal, the Department argued only that the injunction claim was subject to the same general sovereign immunity principles as Wyman's other claims. We conclude that sovereign immunity does not necessarily bar a claim for injunctive relief which seeks to reverse a state agency's prior violation of its statutory obligations, or to prevent future violations.

*Jones v. State Highway Commission*, 557 S.W.2d 225 (Mo. banc 1977), which § 537.600 was intended to overrule, abrogated sovereign immunity against "tort liability." *Id.* at 226. The reference to "tort *liability*" suggests a concern with lawsuits that seek compensatory damages, as in *Jones* and its companion cases. *Cf. Strumberg v. Mercantile Trust Co.*, 367 S.W.2d 535, 538 (Mo.1963) ("The word 'liability,' as used in connection with probate matters usually, if not always, refers to a debt or a pecuniary obligation."). *Jones'* discussion of the various rationales for sovereign immunity (many of which refer to the preservation of public funds) plainly contemplated that the immunity at issue

prevented liability *for damages.* 557 S.W.2d at 228–29.

■ Section 537.600.1 restores "[s]uch sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977" (the date of the *Jones* decision). It also provides that "the immunity of the public entity *from liability and suit for compensatory damages for negligent acts or omissions* is hereby expressly waived in the following instances." (Emphasis added). The phrasing of the waiver provision makes clear that the immunity restored by § 537.600 is immunity "from liability and suit for compensatory damages for negligent acts or omissions," *not* immunity from claims for equitable relief. *See Kubley v. Brooks*, 141 S.W.3d 21, 29 (Mo. banc 2004) (holding that "[s]ection 537.600 deals *solely* with the State's sovereign immunity *in tort*," in reliance on the language of the waiver clause).[8] We have found no case which applies § 537.600 to a claim seeking only equitable relief, nor has the Department cited one, either here or in the trial court. *See also State ex rel. Kansas City Symphony v. State*, 311 S.W.3d 272, 276 (Mo.App. W.D.2010) (despite State's sovereign immunity claim, "[w]e agree with the Symphony that mandamus is an appropriate remedy to compel public officials to perform specific 'ministerial' or mandatory duties" imposed by statute).

■ As the Supreme Court has recognized, "an injunction is a remedy and not a cause of action; therefore, it must be based on some recognized and pleaded le-

---

8. The fact that § 537.600 addresses only those claims which seek to impose *monetary* liability on the State is confirmed by *Missouri Highway and Transportation Commission v. Kansas City Cold Storage, Inc.*, 948 S.W.2d 679 (Mo.App. W.D.1997), which held that a defendant sued by a state agency could assert the agency's comparative fault to reduce the defendant's damages liability. Even though the

alleged negligence of the agency might otherwise implicate sovereign immunity, we held that a comparative fault instruction was appropriate "so long as the allegations supporting a comparative fault submission arise out of the same transaction upon which the state initially filed suit *and the defense does not result in an affirmative judgment against the state." Id.* at 684 (emphasis added).

gal theory." *Goerlitz v. City of Maryville*, 333 S.W.3d 450 (Mo. banc 2011). Here, § 105.850 provides that the State has "the duty and obligation of complying with the provisions of chapter 287, RSMo," although it may not be subject to "liability in tort" (*i.e.*, for damages) for its violation of that duty and obligation. The first sentence of § 287.780 imposes a "duty and obligation" on all employers subject to the Act, not to "in any way discriminate against any employee for exercising any of his rights under this chapter." This "duty and obligation" plainly applies to the State and its subdivisions, and we perceive no reason why sovereign immunity would prevent the State from being subject to injunctive relief because it failed to comply with this "duty and obligation," even though the State may not be subject to the "civil action *for damages*" created by § 287.780's second sentence.

We accordingly reverse the trial court's dismissal of Wyman's claim for equitable relief. We emphasize that our reversal addresses only the general sovereign immunity argument raised by the Department's motion to dismiss. Because the Department's motion to dismiss made only a "generic" immunity argument, we do not decide whether any specific form of equitable relief, or the financial or other consequences of affording particular relief, may implicate sovereign immunity. Nor do we address any other defenses which may be available to Wyman's injunction claim.[9] Those matters remain open for consideration on remand.

**9.** For example, we have some question whether the Wyman plaintiffs can establish standing to seek either a reparative or preventive injunction on behalf of other Department employees, and whether the trial court could properly enter preventive injunctive relief which simply restates the Department's existing obligations under § 287.780. *See, e.g., Hudson v. School District of Kansas City*, 578 S.W.2d 301, 313 (Mo.App. W.D.1979); *City of*

## III.

◼ Wyman separately argues that the trial court erred in dismissing her claims against Martin–Foreman, the Chief Operating Officer of the Hospital. Wyman contends that Martin–Foreman is either an "employer" within the meaning of the Act, such that she can be held liable personally under § 287.780, or that she is a "co-employee" against whom Wyman can assert a common-law retaliatory discharge claim.

The definition of an employer in the Act is set forth in § 287.030.1:

(1) Every person ... using the service of another for pay;

(2) The state, county, municipal corporation, township, school or road, drainage, swamp and levee districts, or school boards, board of education, regents, curators, managers or control commission, board or any other political subdivision, corporation, or quasi-corporation, or cities under special charter, or under the commission form of government;

(3) Any of the above-defined employers must have five or more employees to be deemed an employer for the purposes of this chapter....

*Robinson v. Hooker*, 323 S.W.3d 418 (Mo.App. W.D.2010), held that the term "employer," like the rest of the Act, can be given no broader application than warranted by its plain, unambiguous terms. *Id.* at

*N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir.2011) ("we have said that to comply with Rule 65(d), 'an injunction must be more specific than a simple command that the defendant obey the law'" (citation omitted)); *Jakes, Ltd. v. City of Coates*, 356 F.3d 896, 904 (8th Cir.2004) (an injunction's "command to obey the law was overbroad under general equitable principles.").

423. Under this strict-construction principle, *Robinson* concluded that a fellow employee could not be an "employer" under the Act, because "[g]enerally, a co-employee would not fall within this statutory definition of an 'employer' as a 'person ... using the service of another for pay' and 'hav[ing] five or more employees.'" *Id.* at 424. Although Wyman argues that Martin–Foreman is a "manager" within the meaning of § 287.030.1(2), she would nevertheless constitute an "employer" only if she "ha[d] five or more employees." § 287.030.1(3). Wyman makes no argument that Martin–Foreman "ha[d]" employees, and we accordingly reject her argument that Martin–Foreman can qualify as an "employer."[10]

Wyman's appellate briefing suggests that she could state a viable common-law wrongful discharge claim against Martin–Foreman, even if Martin–Foreman is not Wyman's "employer" under the Act. Wyman did not make this argument in the trial court, however; instead, she only argued that dismissal was unwarranted because Martin–Foreman qualified as an "employer" under the statute. We will not address the unpreserved common-law argument. *See, e.g., BHA Grp. Holding, Inc. v. Pendergast*, 173 S.W.3d 373, 382 (Mo.App. W.D.2005) ("Arguments not presented to the court below are not preserved for appeal." (citation and internal quotation marks omitted)). In addition, even on appeal Wyman cites no authority to support a common-law cause of action against Martin–Foreman; instead, she argues only that, if Martin–Foreman is merely a co-employee, Wyman's common-law remedies (whatever they may be) are preserved by *Robinson* and § 287.120. Wyman's failure to provide authority on appeal establishing the availability of a common-law claim against Martin–Foreman provides a separate reason for our refusal to address the issue.

## Conclusion

The circuit court's dismissal of Wyman's damages claims is affirmed; the dismissal of her equitable-relief claim is reversed, and remanded to the trial court for further proceedings consistent with this opinion.

All concur.

10. We doubt that § 287.030.1(2) is intended to render all "managers" (meaning individuals within an organization who supervise others) "employers" under the Act. Although the provision may not be a model of draftsmanship, the word "managers" appears in a phrase that apparently intends to refer to governmental agencies that constitute "board[s] of education, regents, curators, [or] managers," just as it refers to "school[,] ... road, drainage, swamp and levee districts," and "control commission[s][or] board[s]." Thus, it seems that § 287.030.1(2) intends to include a "board of managers" within the definition of an "employer," *not* individuals who are management employees of a particular organization. To the extent Martin–Foreman does not fall within § 287.030.1(2), she would need to "us[e] the service of another for pay" to constitute an "employer" under § 287.030.1(1). This is an additional criterion Martin–Foreman could not meet under *Robinson*.

We also note that, although § 287.780's first sentence specifies that "[n]o employer *or agent*" shall engage in retaliatory actions, the second sentence only provides for "a civil action for damages against [the worker's] *employer*." The different wording of the two sentences suggests that, while an employer's agents can commit prohibited retaliation, they are not themselves subject to a damages claim. This would provide a further basis for rejecting Wyman's retaliation claim against Martin–Foreman.