In the Missouri Court of Appeals
 Eastern District
 DIVISION FOUR

 MELINDA S. WILLE ) No. ED109082
 )
 Appellant, ) Appeal from the Circuit Court of
 ) the City of St. Louis
 vs. )
 ) Honorable Joan L. Moriarty
 THE CURATORS OF THE UNIVERSITY )
 OF MISSOURI, )
 )
 Respondent. ) Filed: March 23, 2021

 Introduction

 Melinda Susan Wille (“Wille”), the former Project Director for the Family Nutrition and

Education Program (“FNEP”) at the University of Missouri Extension, filed a petition in the

Circuit Court of St. Louis City against the Curators of the University of Missouri (“Curators”),

her former employer, alleging the Curators retaliated against her for filing a workers’

compensation claim by terminating her employment. Wille’s petition sought “compensatory

damages; punitive damages; reasonable attorneys’ fees and costs; and such other relief as the

Court deems just.” The Curators moved to dismiss Wille’s petition for failure to state a claim for

damages based on sovereign immunity. The trial court granted the Curators’ motion but granted

Wille leave to amend her petition to state a claim for injunctive relief.

 Wille filed an amended petition praying for injunctive relief “reinstating [her]

employment at the status she would otherwise have held had [the Curators] not terminated her
employment, including all seniority and credits toward retirement, or awarding equitable front

pay and benefits in lieu thereof.” After a bench trial, the trial court entered judgment for the

Curators, finding “no credible evidence was submitted that supports a finding that [Wille] was

discharged or discriminated against for her exercise of rights under the Workers’ Compensation

Law.”

 Wille raises two points on appeal. First, she argues the trial court erred by dismissing her

claim for damages because it is not barred by sovereign immunity. Second, she argues the trial

court erred by entering judgment for the Curators on her claim for injunctive relief because it is

against the weight of the evidence. We conclude civil actions seeking monetary damages against

the Curators for retaliation against employees for their exercise of workers’ compensation rights

are barred by sovereign immunity. We also conclude the trial court’s judgment denying

equitable relief was not against the weight of the evidence. The trial court’s judgment is

affirmed.

 Factual Background1

 Wille was hired by the Curators in 1994 as a nutrition and life skills educator for the

FNEP at the University of Missouri Extension in St. Louis, Missouri. From 2006 until 2015, she

served as Project Director for the FNEP. Her job duties included supervising a staff of Nutrition

Program Associates (“NPAs”) and providing nutrition and health programming to St. Louis

County, Jefferson County, St. Charles County, and the City of St. Louis.

1
 The Curators moved to dismiss Wille’s appeal for failure to comply with Rule 84.04(c) RSMo (2015), which
requires the appellant to set forth a fair, concise, and relevant statement of facts without argument. Our Court
denied that motion. We note, however, Wille’s statement of facts contains only those facts favorable to her position
and omits facts favorable to the Curators’ position and supporting the judgment. An appellant’s statement of facts
violates Rule 84.04(c) where “it gives a distorted and unbalanced view of the evidence presented below by
excluding relevant facts favorable to the opposing party.” Estate of DeGraff, 560 S.W.2d 342, 345 (Mo. App.
1972). “The function of the appellant’s brief is to explain to the Court why, despite the evidence seemingly
favorable to the respondent, the law requires that appellant must prevail.” Prather v. City of Carl Junction, 345
S.W.3d 261, 263 (Mo. App. S.D. 2011) (emphasis added). Although the deficiencies in Wille’s statement of facts
did not warrant dismissal of her appeal, we admonish her failure to follow Rule 84.04(c).

 2
 In the spring and summer of 2015, the Curators moved the FNEP at the University of

Missouri Extension to a new office. The move involved purchasing furniture for the new office

and disposing of furniture from the old office. While preparing for the office move, Wille’s

supervisors, Cindy Zluticky and Dr. Jo Britt-Rankin, experienced difficulties with Wille. Wille

failed to seek required approval from Dr. Britt-Rankin before making large purchases for the

new office and challenged instructions she was given by Dr. Britt-Rankin regarding the new

office layout.

 In June 2015, the Curators received written complaints about Wille from the NPAs. The

NPAs complained Wille was removing furniture at the old office without warning and forcing

them to work on folding tables, despite the fact the new office was not ready to move into. One

NPA felt Wille took her desk away because she refused Wille’s request to move to the

unfinished new office early. One NPA complained she felt threatened by Wille’s behaviors and

was afraid to confront Wille about the disappearance of furniture because she was afraid Wille

would retaliate against her. Another NPA complained Wille’s behavior was “condescending,

vindictive, threatening, bullying, intimidating, unapproachable, and aggressive.”

 On June 25, 2015, following the Curators’ receipt of the NPAs’ written complaints about

Wille, Dr. Britt-Rankin visited the FNEP office. Dr. Britt-Rankin saw several NPAs were

working on folding tables and had their office furniture removed. During this visit, Dr. Britt-

Rankin told Wille the Curators received “troubling” complaints about her. Dr. Britt-Rankin

asked Wille to take two weeks of paid leave while the complaints were investigated. Wille

signed an administrative leave letter acknowledging she was placed on leave “due to concerns

with [her] work performance, specifically lack of and confusing communication regarding office

 3
moves, office furniture and perplexing treatment of office colleagues regarding the move of the

FNEP office.”

 By July 15, 2015—two days after Wille returned from administrative leave—the Curators

had received additional complaints from the NPAs. The complaints stated the NPAs felt Wille’s

behavior remained threatening and intimidating after she returned from administrative leave. On

July 17, 2015, Zluticky told Wille in an email, “We cannot accept unprofessional threatening

behavior and if it continues there may be disciplinary action up to and including termination.”

On August 10, 2015, the FNEP staff moved into the new office. On August 18, 2015, the

Curators received four additional complaints about Wille. The complaints stated Wille called

several NPAs into her office and reprimanded them for disobeying her instructions about where

they could eat lunch. The NPAs reported the working environment created by Wille had become

tense and they felt unsafe due to Wille’s erratic and unpredictable behavior.

 In early September 2015, Dr. Britt-Rankin and Zluticky wrote emails stating they did not

believe Wille could regain control of the FNEP and create a positive work environment. Dr.

Britt-Rankin and Zluticky wrote emails stating they were supportive of terminating Wille’s

employment with the Curators. On September 29, 2015, the Curators sent James Hunter to meet

with several NPAs about the work environment and prepare a diagnostic report setting forth his

conclusions. During the meeting, the NPAs told Hunter they believed the work environment at

the FNEP was toxic and threatening with Wille as their leader. They told Hunter they were

reluctant to come into the office and felt the workplace was dangerous due to Wille’s behavior.

Hunter’s report concluded the FNEP workplace was suffering from leadership derailment and

Wille was no longer able to lead the FNEP. Hunter’s report stated the situation in the FNEP was

severe and immediate intervention was necessary. On October 23, 2015, Wille’s supervisors,

 4
Hunter, and two other staff members met and concluded termination of Wille’s employment with

the Curators was appropriate. They determined Wille would be terminated on November 2,

2015. Zluticky began collecting the necessary documentation for Wille’s termination.

 On October 26, 2015, Wille was attending a work-related conference in Columbia,

Missouri, when she was involved in a motor vehicle accident and sustained a concussion. She

filed a workers’ compensation claim, which the Curators did not contest. Wille was placed on

medical leave until November 11, 2015. Because Wille was placed on medical leave and the

Curators felt she should be terminated in person, the Curators waited to terminate Wille until she

returned to the office. Upon Wille’s return to work on November 19, 2015, the Curators

terminated her employment.

 Wille heard no one say anything negative about her decision to file a workers’

compensation claim or suggest her workers’ compensation claim was related to the Curators’

decision to terminate her employment.

 On December 22, 2015, Wille sued the Curators, alleging the Curators retaliated against

her for filing a workers’ compensation claim by terminating her employment in violation of

section 287.780.2 Wille’s petition sought “compensatory damages; punitive damages; reasonable

attorneys’ fees and costs; and such other relief as the Court deems just.” The Curators moved to

dismiss Wille’s petition for failure to state a claim based on sovereign immunity. The trial court

granted the Curators’ motion but granted Wille leave to amend her petition to state a claim for

injunctive relief.

 Wille filed an amended petition praying for injunctive relief “reinstating [her]

employment at the status she would otherwise have held had [the Curators] not terminated her

employment, including all seniority and credits toward retirement, or awarding equitable front

2
 All statutory references are to RSMo (2015), unless otherwise indicated.

 5
pay and benefits in lieu thereof.” After a bench trial, the trial court entered judgment for the

Curators, finding “no credible evidence was submitted that supports a finding that [Wille] was

discharged or discriminated against for her exercise of rights under the Workers’ Compensation

Law.”

 This appeal follows.

 Discussion

 Point I: Sovereign Immunity Bars Wille’s Claim for Damages

 Wille first argues the trial court erred by dismissing her claim for damages against the

Curators because its sovereign immunity is waived by section 287.780. The Curators argue the

trial court correctly dismissed Wille’s claim for damages. The Curators contend case law holds

section 105.850 preserves its sovereign immunity against workers’ compensation retaliatory

discharge claims for monetary damages and Wille presents no compelling reason this Court

should depart from established precedent.

 Standard of Review

 We review the trial court’s grant of a motion to dismiss de novo. Wyman v. Missouri

Dep’t of Mental Health, 376 S.W.3d 16, 18 (Mo. App. W.D. 2012). A motion to dismiss for

failure to state a claim upon which relief can be granted is solely “a test of the sufficiency of the

plaintiff’s petition.” R.M.A. by Appleberry v. Blue Springs R-IV Sch. Dist., 568 S.W.3d 420, 424

(Mo. banc 2019). “[T]his Court reviews the petition to determine if the facts alleged meet the

elements of a recognized cause of action, or of a cause that might be adopted in that case.”

Bromwell v. Nixon, 361 S.W.3d 393, 398 (Mo. banc 2012) (internal quotations and citations

omitted). We accept as true the allegations in the plaintiff’s petition and liberally grant her all

reasonable inferences therefrom. R.M.A. by Appleberry, 568 S.W.3d at 424.

 6
 Analysis

 Wille’s claim for retaliatory discharge against the Curators is based on section 287.780.

Section 287.780 provides:

 No employer or agent shall discharge or in any way discriminate against any
 employee for exercising any of his rights under this chapter. Any employee who
 has been discharged or discriminated against shall have a civil action for damages
 against his employer.

“Employer,” as defined by section 287.030.1(2), includes “the state” and “curators.” “The

Curators of the University of Missouri is a public entity with the status of a governmental body.”

Langley v. Curators of Missouri, 73 S.W.3d 808, 811 (Mo. App. W.D. 2002) (internal quotations

omitted). Because a claim for retaliatory discharge under section 287.780 is a tort 3 and the

Curators is a public entity, Wille’s claim implicates the Curators’ sovereign immunity from tort

liability, which is codified in section 537.600. Section 537.600 provides “a public entity with the

status of a governmental body is immune from suit for liability in tort in the absence of an

express statutory provision.” Wyman, 376 S.W.3d at 19 (quoting Langley, 73 S.W.3d at 811)

(alterations omitted). Thus, to make a prima facie case for retaliatory discharge against the

Curators, Wille’s petition must have alleged her claim fell within an exception to sovereign

immunity. See id. at 19 n.1; Richardson v. City of St. Louis, 293 S.W.3d 133, 137 (Mo. App.

E.D. 2009) (“Missouri courts have routinely held . . . the plaintiff bears the burden of pleading

with specificity facts giving rise to an exception to sovereign immunity when suing a public

entity”).

 Wille claims she sufficiently pled her claim falls within an exception to sovereign

immunity because section 287.780 itself waives the Curators’ sovereign immunity from workers’

3
 See Krasney v. Curators of Univ. of Missouri, 765 S.W.2d 646, 650 (Mo. App. W.D. 1989) (“A retaliatory
discharge in violation of § 287.780 . . . constitutes an independent tort. . . .”); Cook v. Hussmann Corp., 852 S.W.2d
342, 344 (Mo. banc 1993) (“§ 287.780 created a judicially cognizable independent tort”).

 7
compensation retaliatory discharge claims. Wille argues that because section 287.030.1(2)

defines “employer” to include “curators,” and because section 287.780 expressly recognizes “a

civil action for damages against [the aggrieved worker’s] employer,” the Workers’

Compensation Law explicitly provides her with a cause of action for monetary damages against

the Curators for retaliatory discharge.

 Wille’s argument ignores the fact the Board of Curators is a state employer and “[t]he

Workers’ Compensation Law is not the only statute addressing the degree to which the State and

its employees are subject to the [Workers’ Compensation Law].” Wyman, 376 S.W.3d at 20;

Tribune Pub. Co. v. Curators of Univ. of Missouri, 661 S.W.2d 575, 584 (Mo. App. W.D. 1983)

(“The Board of Curators is the entity through which the ‘state’ functions in governing the

University”). “In 1969, the General Assembly enacted sections 105.800 through 105.850 to

extend the provisions of the Workers’ Compensation Law [chapter 287] to include all state

employees.” Krasney v. Curators of Univ. of Missouri, 765 S.W.2d 646, 650 (Mo. App. W.D.

1989) (footnote omitted). “Sections 105.800 through 105.850 specify the manner in which state

employees are to be made subject to the Workers’ Compensation Law” and “the manner in

which the State will insure its workers’ compensation liability, and fund-related claim expenses.”

Wyman, 376 S.W.3d at 20. Section 105.850 provides:

 Nothing in sections 105.800 to 105.850 shall ever be construed as acknowledging
 or creating any liability in tort or as incurring other obligations or duties except
 only the duty and obligation of complying with the provisions of chapter 287,
 RSMo.

 Section 105.850 has been interpreted in three prior cases as preserving the State’s

sovereign immunity against workers’ compensation retaliatory discharge claims, although the

State is otherwise subject to the Workers’ Compensation Law. In Krasney, the Western District

held section 105.850 operates as “an express legislative disclaimer” that neither section 287.030

 8
nor section 287.780 waive the Curators’ sovereign immunity. 765 S.W.2d at 650. The Western

District interpreted section 105.850 as meaning “that, any intimations to the contrary

notwithstanding, none of the provisions of the Workers Compensation Law shall be construed as

a waiver of sovereign immunity in favor of a state employee.” Id.

 In King v. Probate Division, this Court reaffirmed the result in Krasney. 958 S.W.2d 92

(Mo. App. E.D. 1997). The plaintiff in King argued the last portion of section 105.850, which

provides “except only the duty and obligation of complying with the provisions of chapter 287,”

should be construed to mean the State maintained its sovereign immunity in any areas except

those covered by the Workers’ Compensation Law. Id. at 93. This Court rejected the plaintiff’s

contention and found, applying the “last antecedent rule,”4 that section 105.850 provided “the

state has the duty and obligation to comply with the provisions of Chapter 287, but has not

waived tort liability in connection therewith.” Id. The Western District most recently reaffirmed

the results in Krasney and King in Wyman. 376 S.W.3d 16. In Wyman, the Western District

upheld both Krasney’s and King’s construction of section 105.850 as preserving the State’s

sovereign immunity against workers’ compensation retaliatory discharge claims for monetary

damages under section 287.780. Id. at 20-22.

 Like the plaintiffs in King and Wyman, Wille asks us to refuse to follow the earlier

decisions addressing this exact sovereign-immunity issue. However, “[w]e are bound by the

doctrine of stare decisis,” which “directs that once a court has laid down a principle of law

applicable to a certain state of facts, it must adhere to that principle, and apply it to all future

cases, where facts are substantially the same; regardless of whether the parties and property are

4
 The “last antecedent rule” instructs “relative and qualifying words, phrases, or clauses are to be applied to the
words or phrase immediately preceding and are not to be construed as extending to or including others more
remote.” Wyman v. Missouri Dep’t of Health, 376 S.W.3d 16, 21 n.7 (quoting Rothschild v. State Tax Comm’n, 762
S.W.2d 35, 37 (Mo. banc 1988)).

 9
the same.” Rothwell v. Dir. of Revenue, 419 S.W.3d 200, 206 (Mo. App. W.D. 2013) (internal

quotations and alterations omitted); see State ex rel. KCP & L Greater Missouri Operations, Co.

v. Missouri Pub. Serv. Comm’n, 408 S.W.3d 153, 169 n.9 (Mo. App. W.D. 2013) (holding a

court’s decision has stare decisis effect upon a court of the same rank).

 Wille argues that, notwithstanding the doctrine of stare decisis, we should find Krasney,

King, and Wyman were wrongly decided. None of the arguments she advances are persuasive.

Wille first argues section 105.850 does not bar claims for retaliatory discharge under section

287.780 because section 105.850 only applies to prevent “anything within Sections 105.800 to

105.850 from being construed as creating tort liability.” (alteration in original). Thus, according

to Wille, “[b]ecause . . . Section [287.780 is] not within [sections] 105.800 to 105.850, Section

105.850 does not apply.” This argument misunderstands the relationship between sections

105.800 through 105.850 and chapter 287. Sections 105.800 through 105.850 were enacted to

specify how state employees are made subject to and how the State must comply with chapter

287 of the Workers’ Compensation Law. Krasney, 765 S.W.2d at 650. Sections 105.800

through 105.850 do not stand alone, as Wille suggests.5

 Next, Wille argues that because section 105.850 was enacted before section 287.780 was

amended to provide a private cause of action for retaliatory discharge, any preservation of the

Curators’ sovereign immunity that section 105.850 provides does not apply to retaliatory

discharge claims for monetary damages under section 287.780. She argues section 287.780

conflicts with section 105.850 and the General Assembly intended to impliedly repeal section

5
 We note Wille also argues section 287.060 provides all employers are subject to the provisions of chapter 287
except where chapter 287 provides otherwise. She argues “the state” and “curators” are not excepted within chapter
287; therefore, section 287.780 provides state employees a private cause of action for damages against their state
employer. Like her argument regarding the plain language of section 105.850, this argument misunderstands the
relationship between section 105.850 and chapter 287. Although chapter 287 does not except the State from suit for
monetary damages under section 287.780, section 105.850 preserves the State’s sovereign immunity from such
suits.

 10
105.850 by amending section 287.780 to provide actions for retaliatory discharge. “Repeals of

statutory provisions by implication, however, are disfavored.” Raster v. Ameristar Casinos, Inc.,

280 S.W.3d 120, 132 (Mo. App. E.D. 2009). Instead, we must consider statutes relating to the

same subject together and harmonize them if possible “to give meaning to all provisions of

each.” Day v. Wright Cty., 69 S.W.3d 485, 490 (Mo. App. S.D. 2000). “When two statutes

appear to conflict, we will attempt to reconcile them and give effect to both.” Id. “If the conflict

is otherwise irreconcilable, the general statute must yield to the more specific statute.” Id.

 Section 287.780 and section 105.850 can be harmonized. Chapter 287 details the rights

and obligations of all employees and employers under the Workers’ Compensation Law. Section

287.780 provides employees may bring civil actions for damages against their employers for the

tort of retaliatory discharge. However, sections 105.800 to 105.850 address the applicability of

chapter 287 to state employees and employers. Section 105.850 has been construed by this

Court and the Western District as preserving the State’s sovereign immunity against tort claims,

including the tort of retaliatory discharge based on section 287.780. Krasney, 765 S.W.2d at

650; King, 958 S.W.2d at 93; Wyman, 376 S.W.3d at 20-22. Section 105.850 is more specific

than section 287.780. Therefore, to the extent the statutes conflict, section 105.850 controls over

section 287.780. Day, 69 S.W.3d at 490.

 Wille cites numerous other statutory schemes, including the Missouri Human Rights Act,

§ 213.010 et seq., the Omnibus Nursing Home Act, § 198.003 et seq., the Overhead Power Line

Safety Act, § 319.075 et seq., the Public Employee Whistleblower’s Statute, § 105.055, and the

Missouri Sunshine Law, § 610.010 et seq., to support her argument section 287.780 waives the

Curators’ sovereign immunity for workers’ compensation retaliatory discharge claims.

However, none of these statutory schemes aid her. As Wille conceded at oral argument, none of

 11
the statutes she cites contain a provision similar to section 105.850 expressly preserving the

State’s sovereign immunity from tort claims. Thus, they are not analogous.6

 The trial court correctly held Wille’s claim for monetary damages for retaliation in

violation of section 287.780 against the Curators was barred by sovereign immunity. Dismissal

of her claim was warranted.

 Point I is denied.

 Point II:
 Trial Court’s Judgment Denying Equitable Relief is Not Against the Weight of the Evidence

 Wille next argues the trial court erred by entering judgment for the Curators on her claim

for injunctive relief because it is against the weight of the evidence. The Curators argue the trial

court’s judgment is not against the weight of the evidence.

 Standard of Review

 “On review of a court-tried case, an appellate court will affirm the circuit court’s

judgment unless there is no substantial evidence to support it, it is against the weight of the

evidence, or it erroneously declares or applies the law.” Ivie v. Smith, 439 S.W.3d 189, 198-99

(Mo. banc 2014) (citing Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976)). “A circuit

court’s judgment is against the weight of the evidence only if the circuit court could not have

reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the

judgment.” Id. at 206. We defer to the trial court’s findings of fact when the facts found by the

trial court depend on credibility determinations. Pearson v. Koster, 367 S.W.3d 36, 43-44 (Mo.

6
 We note Wille also argues Krasney, King, and Wyman ignore earlier-decided cases that hold the private cause of
action for retaliatory discharge under section 287.780 applies to state employers despite section 105.850. She cites
Mitchell v. St. Louis Cty., 575 S.W.2d 813 (Mo. App. E.D. 1978); Davis v. Richmond Special Road Dist., 649
S.W.2d 252 (Mo. App. W.D. 1983); Henderson v. St. Louis Hous. Auth., 605 S.W.2d 800 (Mo. App. E.D. 1979);
and Rodriguez v. Civil Serv. Comm’n, 582 S.W.2d 354 (Mo. App. E.D. 1979) to support her argument. However,
none of these cases hold what Wille suggests. None of the cases she cites addressed sovereign immunity, involved
state employers, or discussed section 105.850. Sections 105.800 through 105.850 govern workers’ compensation for
state employees, not employees of any government entity. See §§ 105.800 et seq. (titled “Workers’ Compensation
for State Employees”).

 12
banc 2012). “When the evidence poses two reasonable but different conclusions, appellate

courts must defer to the circuit court’s assessment of that evidence.” Ivie, 439 S.W.3d at 206.

“Appellate courts should exercise the power to set aside a decree or judgment on the ground that

it is ‘against the weight of the evidence’ with caution and with a firm belief that the decree of

judgment is wrong.” JAS Apartments, Inc. v. Naji, 354 S.W.3d 175, 182 (Mo. banc 2011) (citing

Murphy, 536 S.W.2d at 31).

 Analysis

 To challenge a trial court’s judgment as against the weight of the evidence, an appellant

must:

 (1) identify a challenged factual proposition, the existence of which is necessary
 to sustain the judgment;

 (2) identify all of the favorable evidence in the record supporting the existence of
 that proposition;

 (3) identify the evidence in the record contrary to the belief of that proposition,
 resolving all conflicts in testimony in accordance with the trial court’s
 credibility determinations, whether explicit or implicit; and,

 (4) demonstrate why the favorable evidence, along with the reasonable inferences
 drawn from that evidence, is so lacking in probative value, when considered in
 the context of the totality of the evidence, that it fails to induce belief in that
 proposition.

Houston v. Crider, 317 S.W.3d 178, 187 (Mo. App. S.D. 2010).

 Wille correctly identifies the factual proposition necessary to sustain the judgment as the

trial court’s conclusion no causal connection existed between her termination from employment

and her filing a workers’ compensation claim. However, she identifies no evidence in the record

supporting that proposition. For example, Wille does not acknowledge the evidence that the

Curators received written complaints about her from the NPAs in June 2015. The NPAs

 13
complained Wille engaged in threatening and hostile behavior connected to FNEP’s recent move

to a new office, such as removing furniture and reprimanding them for eating lunch in certain

rooms of the new office. She does not acknowledge the evidence she was asked to take

administrative leave “due to concerns with [her] work performance, specifically lack of and

confusing communication regarding office moves, office furniture and perplexing treatment of

office colleagues regarding the move of the FNEP office.” When the complaints persisted after

Wille’s administrative leave ended, Zluticky told Wille in an email, “We cannot accept

unprofessional threatening behavior and if it continues there may be disciplinary action up to and

including termination.” Wille does not acknowledge the evidence that her supervisors

exchanged emails expressing their beliefs she could no longer lead her unit in September 2015.

 Wille also does not acknowledge her supervisors and several other staff members

testified the decision to terminate Wille’s employment was made at a meeting on October 23,

2015—days before Wille’s workplace injury. Zluticky began collecting the necessary

documentation for Wille’s termination immediately following the October 23, 2015 meeting.

Wille’s supervisors and other staff members testified Wille’s termination was set for November

2, 2015, however, they delayed her termination to November 19, 2015—her first day back in the

office—because she was placed on medical leave and felt she should be terminated in person.

Wille does not acknowledge her termination letter did not mention her workers’ compensation

claim as a reason for termination but stated:

 [T]his termination is a result of your inability to effectively lead the Urban East
 FNEP unit forward as determined by our investigation of numerous complaints of
 intimidation of subordinates, and poor personnel and fiscal management of grant
 resources. . . . We have discussed performance expectations and your continued
 demonstration of poor performance on several occasions. Unfortunately, these
 performance issues have continued.

 14
Nor does she acknowledge her own testimony she never heard any supervisors or staff members

speak negatively about her decision to file a workers’ compensation claim or suggest her

workers’ compensation claim was related to the Curators’ decision to terminate her employment.

“The omission of material favorable evidence from the weighing process strips [Wille’s]

purported demonstration of any analytical or persuasive value.” Id. at 189.

 Wille identifies only evidence in the record which she contends is contrary to the

proposition. Wille contends several emails exchanged by her supervisors and other staff

members “made clear” the decision to terminate her employment was not made until after her

workplace injury. She highlights Zluticky wrote an email after October 23, 2015, asking

whether Zluticky should shut off Wille’s email if the Curators were putting Wille on

administrative leave rather than firing her. Wille contends Zluticky’s email “makes no sense if,

as [the Curators] claim, Zluticky made the final decision to fire [her] on October 23rd.” Wille

also highlights another staff member wrote emails on October 28 and 29, 2015 calling Wille’s

termination “potential” and Dr. Britt-Rankin wrote an email on October 29, 2015, stating human

resources had not officially approved Wille’s termination. Wille also emphasizes she received a

positive performance review in June 2015 and a pay raise in September 2015.

 In identifying this evidence, however, Wille fails to resolve all conflicts in the testimony

in accordance with the trial court’s explicit or implicit credibility determinations. Id. at 187.

The Curators maintain, and we agree, the trial court found credible the testimony of Wille’s

supervisors that email correspondence suggesting the termination decision was not finalized on

October 23, 2015, was made due to their confusion regarding the procedures for termination

given Wille’s placement on medical leave after her workplace injury. In its judgment, the trial

court explicitly found “[t]he credible evidence admitted at trial only supports a finding that the

 15
decision to terminate [Wille] was made prior to the relevant injury and subsequent worker’s

compensation claim.” Thus, to the extent the testimony of any of Wille’s supervisors could be

construed to mean the decision to terminate Wille’s employment was not made until after her

workplace injury, the trial court did not find that testimony credible.

 Wille’s failure to identify favorable evidence in the record supporting the factual

proposition “doom[s]” her ability to satisfy the last step of her against-the-weight-of-the-

evidence challenge. Id. at 188. To find for Wille on this point would require this Court to devise

and articulate its own demonstration of how the omitted favorable evidence lacks probative value

as compared to the totality of the evidence, rendering it against the weight of the evidence. Id. at

189. “Such action on our part would thrust us into becoming an advocate on [Wille’s] behalf; a

role we are prohibited from assuming.” Id. (citing Boyd v. Boyd, 134 S.W.3d 820, 824 (Mo.

App. W.D. 2004)). Wille’s against-the-weight-of-the-evidence challenge fails.

 Point II is denied.
 Conclusion

 The trial court’s judgment is affirmed.

 _______________________________
 Philip M. Hess, Judge

Gary M. Gaertner, Jr., P.J. and
Michael E. Gardner, J. concur.

 16