STATE OF NEBRASKA, ex rel. Benjamin NELSON, Governor, Plaintiff,

v.

CENTRAL INTERSTATE LOW–LEVEL RADIOACTIVE WASTE COMMISSION, Defendant.

No. 4:CV95–3053.

United States District Court, D. Nebraska.

Oct. 23, 1995.

Don Stenberg, Attorney General, Linda L. Willard, Assistant Attorney General, Lincoln, NE, William M. Lamson, Jr., Special Assistant Attorney General, Kennedy, Holland, DeLacy & Svoboda, Omaha, NE, for Plaintiff.

Shawn D. Renner & Alan E. Peterson, Cline, Williams, Wright, Johnson & Oldfather, Lincoln, NE, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND RELATED MEMORANDUM AND ORDER

KOPF, District Judge.

This case involves the Central Interstate Low–Level Radioactive Waste Commission (Commission) and broadly puts at issue whether the member states of a congressionally approved compact have agreed to change the number of representatives on the Commission. The State of Nebraska seeks a declaration that the State of Kansas breached a binding agreement with the other member states when the Kansas Legislature failed to approve legislation that would have immediately granted Nebraska additional representation on the Commission. Because of this alleged breach, Nebraska argues that the Commission improperly failed to seat Nebraska's additional representatives. After a brief bench trial, I find and conclude that the Commission properly refused to seat Nebraska's additional representatives.[1]

Pursuant to Federal Rule of Civil Procedure 52(a), I now set forth my findings of fact and conclusions of law that have in-formed my decision to enter judgment for the Commission.

### I. Findings of Fact and Conclusions of Law [2]

1. Plaintiff, the State of Nebraska, is a state of the United States of America. E. Benjamin Nelson is the duly elected and acting Governor of the State of Nebraska.

2. Defendant, the Central Interstate Low–Level Radioactive Waste Commission (the "Commission"), was established pursuant to the Central Interstate Low–Level Radioactive Waste Compact (the "Compact"). *See State ex rel. Nelson v. Central Interstate Low–Level Radioactive Waste Comm'n,* 834 F.Supp. 1205, 1207–08 (D.Neb.1993) (describing enactment of the Compact and the formation of the Commission), *aff'd,* 26 F.3d 77 (8th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 483, 130 L.Ed.2d 395 (1994). The Compact is reprinted in the Revised Statutes of the State of Nebraska. (Vol. 2A, Appendix BB, at 937–946 (Reissue 1989)). Member states of the Compact are Arkansas, Kansas, Louisiana, Oklahoma, and Nebraska. The Compact was formed pursuant to federal law and was consented to by Congress. *Id.* Under the Compact, the Commission is a legal entity separate and distinct from the party states. *Compact* Art. IV(k)(2). The Commission has the right to sue and be sued. *Id.* Art. IV(e) & (k)(2).

A. The United States District Court for the District of Nebraska has the authority pursuant to the Compact to review decisions of the Commission when suit is brought by any party state aggrieved by a final decision of the Commission. *Id.* Art. IV(*l* ).

B. Because this case involves a challenge to the refusal of the Commission to seat additional representatives to the Commission; because the State of Nebraska, a party state to the Compact, is aggrieved by that decision; and because a construction of the Compact is inextricably interwoven with any

---

1. While I tend to agree with the Commission that any amendment of the Compact like the one proposed by Nebraska would require Congressional approval before the amendment could become effective, it is unnecessary to resolve that issue in this case. I therefore decline to do so.

2. Any finding of fact which is more properly construed as a conclusion of law shall be so construed and any conclusion of law that is more properly construed as a finding of fact shall be so construed.

resolution of Nebraska's claims, this court has federal-question jurisdiction to hear this suit pursuant to 28 U.S.C. § 1331. *State ex rel. Nelson v. Central Interstate Low–Level Radioactive Waste Comm'n,* 834 F.Supp. at 1210. *See also County of Boyd v. US Ecology, Inc.,* 48 F.3d 359, 361 (8th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 65, —— L.Ed.2d —— (1995).

3. This case deals with Nebraska's alleged entitlement to representation on the Commission in excess of the number explicitly provided for in the Compact.

A. Article IV(a) of the Compact states in relevant part:

The commission shall consist of one voting member from each party state to be appointed according to the laws of each state. The appointing authority of each party state shall notify the commission in writing of the identity of its member and any alternates.

B. There is no evidence and there is no claim by Nebraska that the Compact has ever been formally amended to grant Nebraska more than one voting member on the Commission. That is, Nebraska concedes there is no such written amendment signed by all member states, no such written amendment signed by the Commission, and no such written amendment consented to by Congress. Nebraska further concedes that not all of the member states have enacted legislation which would implement such an amendment at this time.

C. Nebraska and the Commission agree that "Representative[s] of each of the member states of the Compact agreed in principle to request passage of amendments to the Compact, and legislation was introduced in each of the member states' legislatures to implement such amendments." (Filing 23, Pretrial Conference Order, Statement of Uncontroverted Facts, at 3 ¶ D(D).) Save for its own "representative" (a person in the Governor's policy office), Nebraska did not call any of these "representatives" to testify. What, if anything, these other "representatives" agreed to beyond the agreement "in principle to *request* passage of amendments to the Compact" is unknown.

4. The Legislature of the State of Arkansas passed legislation which provided that the Commission shall consist of one voting member for each party state, except that each host state shall have two at-large voting members and one non-voting member from the county in which the facility is located. (*Id.* at 3 ¶ E.)

5. The Legislature of the State of Louisiana passed a statute in 1991 which provided that the Commission shall consist of one voting member from each party state, except that each host state shall have two at-large voting members and one non-voting member from the county in which the facility is located. (*Id.* at 3 ¶ F.)

6. The Legislature of the State of Oklahoma passed a statute in 1992 which provided that the Commission shall consist of one voting member from each party state, except that each host state shall have two at-large voting members and one non-voting member from the county in which the facility is located. (*Id.* at 4 ¶ G.)

7. The Legislature of the State of Nebraska passed a statute in 1991 which provided that the Commission shall consist of one voting member from each party state, except that each host state shall have two at-large voting members and one non-voting member from the county in which the facility is located. (*Id.* at 4 ¶ H.)

8. The Legislature of the State of Kansas passed a statute in 1993 which provided that the Commission shall consist of one voting member from each party state, except that each host state shall have two at-large voting members. This statute was passed with the proviso that it would not take effect until the appropriate authority of the State of Nebraska issues a license or permit for the operation of the facility. (*Id.* at 4 ¶ I.)

9. As of the date of the trial in this case, no license had been issued for construction of a low-level radioactive waste storage facility within the Compact area.

10. The State of Nebraska was selected as the host state of the Compact on December 15, 1987. (*Id.* at 4 ¶ K.)

11. On December 6, 1994, E. Benjamin Nelson, Governor of the host state, Nebras-

ka, announced that he had appointed Dr. Greg Hayden as a second voting member and Craig Zeisler as a non-voting member of the Commission pursuant to Neb.Rev.Stat. § 81–1599.02 (1994). (*Id.* at 5 ¶ M.)

12. On December 8, 1994, the Commission met at the Airport Marriott Hotel in Kansas City, Missouri. At said meeting, a letter was received from E. Benjamin Nelson, Governor of the State of Nebraska, informing the Commission of his selection for the second voting member from the host state and selection of the non-voting member from the county in which the facility is to be located. (*Id.* at 5 ¶ N.)

13. At the December 8, 1994, meeting, the Commission passed the following resolution:

> That the Commission not seat Dr. Greg Hayden and Craig Zeisler as Nebraska voting and non-voting members of the Commission because their seating would [be] violative of Section 222 of Article IV(a) of the Central Interstate Low–Level Radioactive Waste Compact consented to by Congress and that the Commission hold a meeting in the host state to hear the dispute which concerns the effective date of the Compact amendment which has arisen between the party states regarding this Compact.

(*Id.* at 5–6 ¶ O.)

14. Congress specifically granted its consent to "each and every part and article" of the Compact. Omnibus Low–Level Radioactive Waste Interstate Compact Consent Act, Pub.L. No. 99–240, Tit. II in pt., 99 Stat. 1859, Sec. 222 (codified at 42 U.S.C. § 2021d, Note).

■ 15. For many purposes, Congress's consent to the Compact transformed the Compact into a law of the United States. *State ex rel. Nelson v. Central Interstate Low–Level Radioactive Waste Comm'n,* 834 F.Supp. at 1210. *See also County of Boyd v. US Ecology, Inc.,* 48 F.3d at 361.

16. The Compact itself nullifies state laws which are inconsistent with the Compact. *Compact,* Art. VI(b) ("No party state shall pass or enforce any law or regulation which is inconsistent with this compact.").

17. As a "law of the United States," the Compact preempts inconsistent state laws which conflict with it pursuant to the Supremacy Clause, U.S. Const. art. VI, cl. 2. *Cf. Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 141–52, 83 S.Ct. 1210, 1216–22, 10 L.Ed.2d 248 (1963).

■ 18. One member state in a compact cannot unilaterally nullify provisions of the compact or give final meaning to a compact. *State ex rel. Nelson v. Central Interstate Low–Level Radioactive Waste Comm'n,* 834 F.Supp. at 1208.

■ 19. Except as otherwise explicitly provided for in a compact, the "concurrence" of all signatories to a compact is required to implement legislation which would impose burdens on the compact. *Kansas City Area Transp. Auth. v. State of Missouri,* 640 F.2d 173, 174 (8th Cir.1981).

■ A. Where, as here, the voting power of every member state except for one is to be diminished or diluted by the legislative amendment, a compact is substantially burdened unless all members agree to the change in voting power. The "burden" arises because changes in "voting power" substantially alter the original expectations of the majority of states which comprise the compact. Moreover, as voting power in a compact has a direct relationship to the independence and sovereignty of each party state, a party state whose voting power has been reduced or diluted has lost a portion of its precious independence and sovereignty which is otherwise guaranteed by the Constitution. Therefore, amendments to the Compact altering the voting power of member states must be accomplished through the "concurrence" of all member states, and most particularly by the member states whose voting power will be reduced or diluted.

B. In turn, "concurrence" of one state to a legislative amendment of another state imposing this type of burden requires legislative approval by the "burdened" state. The requirement for legislative approval is plain from the words of the Compact. Before any member state is "bound" by the Compact, the Compact requires that the state to be

bound enact legislation. *Compact,* Art. VII(c) ("An eligible state shall become a member of the compact and *shall be bound by it after such state has enacted the compact into law.*") (emphasis added).[3] Since a state is "bound ... *after* such state has enacted the compact into law," an amendment to the compact that lacks the force of law does not bind a state which has failed to enact legislation agreeing to be so bound.[4]

■ 20. Kansas, a signatory to the Compact, has not effectively concurred in the proposed amendments to the Compact as evidenced by K.S.A. § 65–34a01a (Supp. 1994).

21. Until Nebraska issues a license for the proposed disposal facility, the original Compact, as consented to by Congress, remains in effect under Kansas law. K.S.A. § 65–34a01a (Supp.1994).

■ 22. Treating the Compact as an existing agreement, the minds of the parties to an existing agreement must meet to effect any proposed modification to the agreement, and one party to the agreement cannot alter the terms thereof without the assent of all the other parties. *See, e.g., Caffrey Farms, Inc. v. Williams Pipe Line Co.,* 739 F.2d 1366, 1368 (8th Cir.1984).

23. Mere negotiations for a variance in the terms of an agreement do not constitute a modification. *Id.*

24. There is no evidence that Kansas ever agreed to "adopt" the proposed amendments. At most, Kansas (and the other member states) agreed to propose legislation to their state legislatures. The evidence reflects that legislation was proposed in the State of Kansas, but the Kansas Legislature has not agreed to such amendments. K.S.A. § 65–34a01a (Supp.1994).

■ 25. There is no evidence that the Commission was a party to the agreement asserted by Nebraska, and thus there is no basis for any assertion that the Commission as an entity was contractually required to deviate from the explicit terms of the Compact.

26. As a matter of fact, there is no evidence that Kansas agreed to "adopt" the proposed amendments. As a matter of fact, there is no evidence that any of the member states agreed to do anything beyond the proposal of legislation to their respective state legislatures. As a matter of a fact, there is no evidence that the Commission was a party to any agreement to amend the Compact.

27. As a matter of law, the Compact has not been amended. As a matter of law, there was no contract or agreement to amend the Compact between all the member states. As a matter of law, if a contract or agreement existed, the Commission was not a party to any contract or agreement to amend the Compact.

## II. Related Memorandum and Order

Since there was no amendment to the Compact or agreement to amend the Compact, the Commission's action in refusing to seat Nebraska's additional representatives was lawful. Therefore, judgment should be entered for the Commission.

Accordingly,

IT IS ORDERED that judgment shall be entered by separate document providing that final judgment is entered in favor of Defendant and against Plaintiff, Plaintiff shall take nothing, and this case is dismissed.

---

3. Moreover, before a state may withdraw from the Compact, legislation is likewise required. *Id.* Art VII(d) ("Any party state *may withdraw from this compact by enacting a statute repealing the same.*") (emphasis added).

4. If this were not the case, no state legislature would ever enter into a compact because it would never know how the compact it originally adopted as a matter of its own state law might later be changed without its consent. Indeed, if

Nebraska's position were adopted, a legislature by originally enacting a compact into its state law would have relinquished its continuing authority to maintain or alter its own state laws. For example, in this case the laws of the State of Kansas would have been amended by the legislatures of Nebraska, Louisiana, Oklahoma, and Arkansas. This result could not possibly have been intended by any member state or by Congress when the Compact was originally adopted.