IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
EDGAR ALFONZO BANKS, )
 )
 Appellant, )
 )
v. ) WD84186
 )
KANSAS CITY AREA ) Opinion filed: October 26, 2021
TRANSPORTATION AUTHORITY, )
 )
 Respondent. )

APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
 THE HONORABLE ADAM L. CAINE, JUDGE

 Division One: W. Douglas Thomson, Presiding Judge,
 Alok Ahuja, Judge and Karen King Mitchell, Judge

 Edgar A. Banks (“Banks”) appeals the judgment of the Jackson County Circuit

Court dismissing his claims under the Missouri Human Rights Act (the “MHRA”) for

failure to state a claim upon which relief can be granted. Banks asserted claims of

sex discrimination and retaliation against the Kansas City Area Transportation

Authority’s (the “KCATA”). The KCATA moved to dismiss the action for failing to

state a claim upon which relief can be granted, which the trial court granted. On

appeal, Banks claims the trial court erred in granting the KCATA’s motion to dismiss

for failure to state a claim upon which relief may be granted because: (1) the
interstate compact (the “Compact”) that created the KCATA does not include issues

of employment discrimination in its subject matter and, therefore, does not preclude

the application of the MHRA to the KCATA; (2) the “concurred in” clause of the

Compact does not preclude the application of the MHRA to the KCATA in that the

MHRA is “complementary or parallel” to the Kansas Act Against Discrimination (the

“KAAD”) and does not impose an impermissible unilateral burden on the KCATA; (3)

the dismissal of Banks’ claims based on an unpleaded affirmative defense was

improper; (4) the KCATA should be judicially estopped from denying that it is subject

to the MHRA; and (5) the KCATA should be equitably estopped from denying that it

is subject to the MHRA. We affirm.

 Factual and Procedural History

 Banks, an African-American male, was employed as a bus driver for the

KCATA from November 2015 until March 2016. The KCATA is a bi-state agency

created in 1965 pursuant to the Compact, an interstate compact between the state of

Missouri and Kansas. On February 27, 2017, Banks filed a petition (“Petition”)

against the KCATA alleging that while he was an employee of the KCATA, he was

subjected to sex discrimination and retaliation in violation of the MHRA. Banks

alleged that during his classroom training, his cell phone inadvertently recorded the

training instructors making offensive discriminatory remarks about Banks. Banks

reported the conduct and claimed he was treated less favorably than his classmates

due to his reporting.

 2
 After Banks completed his classroom training, he began driving a bus for the

KCATA. While Banks was a bus operator, he was involved in two separate incidents.

In the first incident, the bus that Banks was operating hit a curb. In the second

incident, the bus he was operating was struck by another vehicle. Banks alleged he

received a write-up for each of these incidents and was subsequently terminated from

employment for these two infractions. Banks alleged he knew of a female employee

who also had two infractions but her employment was not terminated. Banks alleged

he was treated less favorably than female employees and retaliated against for

reporting and opposing discrimination. Banks sought compensatory and punitive

damages.

 The KCATA removed the case to federal court. However, the cause was

remanded back to the circuit court upon the federal court’s grant of Banks’ motion to

remand. Thereafter, the KCATA filed a motion to dismiss Banks’ Petition with

prejudice for failure to state a claim upon which relief can be granted. In its

accompanying suggestions in support of its motion, the KCATA argued that the

KCATA is not subject to the MHRA because the KCATA was created by the Compact,

which was approved by an act of Congress. The KCATA claimed that because Kansas

had not expressly agreed that the burdens of the MHRA may be imposed on the

KCATA, the MHRA cannot be applied to the KCATA. The KCATA also asserted that

the Petition does not allege facts showing the state of Kansas had expressly concurred

in having the MHRA applied to the KCATA.

 3
 While the motion to dismiss was pending, our Eastern District handed down

decisions in Jordan v. Bi-State Development Agency, 561 S.W.3d 57 (Mo. App. E.D.

2018) and Emsweller v. Bi-State Development Agency of Missouri-Illinois Metro. Dist.,

591 S.W.3d 495 (Mo. App. E.D. 2019). After additional briefing and oral argument

by the parties, the trial court entered its judgment (“Judgment”) granting the

KCATA’s motion to dismiss finding Banks’ Petition failed to state a claim upon which

relief may be granted.

 In the Judgment, the trial court found “[u]nder Missouri law, one party to an

interstate compact is prohibited from enacting legislation that would impose

unilateral burdens upon the compact, absent the concurrence of the other parties to

the compact,” citing KMOV TV, Inc. v. Bi-State Development Agency of Missouri-

Illinois Metro. Dist., 625 F.Supp.2d 808, 812 (E.D. Mo. 2008). The trial court found

the Petition failed to allege facts establishing the state of Kansas, a party to the

Compact, concurred in having the MHRA apply to the KCATA. The trial court also

found the KCATA is not subject to suit under the MHRA as it imposes an

impermissible unilateral burden on KCATA, citing Jordan, 561 S.W.3d at 61-62 and

Emsweller, 591 S.W.3d at 500.

 Banks appeals.

 Standard of Review

 “A motion to dismiss for failure to state a claim is solely a test of the adequacy

of the plaintiff’s petition.” Wyman v. Mo. Dept. of Mental Health, 376 S.W.3d 16, 18

(Mo. App. W.D. 2012). We review the trial court’s dismissal for failure to state a claim

 4
upon which relief can be granted de novo. Id. “A court reviews the petition in an

almost academic manner, to determine if the facts alleged meet the elements of a

recognized cause of action, or of a cause that might be adopted in that case.” Id. “‘In

order to avoid dismissal, the petition must invoke substantive principles of law

entitling plaintiff to relief and . . . ultimate facts informing the defendant of that

which plaintiff will attempt to establish at trial.’” Jordan, 561 S.W.3d at 59 (citation

omitted).

 Analysis

 Banks raises five points on appeal. Banks claims the trial court erred in

granting the KCATA’s motion to dismiss for failure to state a claim upon which relief

may be granted because the Compact does not preclude the application of the MHRA

to the KCATA; it was improperly based on an unpleaded affirmative defense; and the

KCATA should be judicially and equitably estopped from denying that it is subject to

the MHRA.

 We begin our analysis with Point II as it addresses the central issue of this

appeal and the application of the recent opinions of our Eastern District in Jordan

and Emsweller, wherein the same issue was decided rendering those cases

authoritative precedent.1

 1
 The court of appeals is generally bound to follow its own precedential decisions under the
doctrine of stare decisis. Tillman v. Cam’s Trucking, Inc., 20 S.W.3d 579, 584 n.9 (Mo. App. S.D. 2000).
“Under the doctrine of stare decisis, a court follows earlier judicial decisions when the same point arises
again in litigation.” Id. “[S]tare decisis is the cornerstone of our legal system. ‘It is identity of principle
not similarity of facts, which furnishes authoritative precedent.’ Where the same or analogous issue
was decided in an earlier case, such case stands as authoritative precedent unless and until it is
overruled.” M & H Enterprises v. Tri-State Delta Chemicals, Inc., 984 S.W.2d 175, 178 n.3 (Mo. App.
S.D. 1998) (citations omitted).

 5
Point II
 In Point II, Banks argues that the trial court erred in granting KCATA’s

motion to dismiss for failure to state claims of discrimination and retaliation under

the MHRA because the court misinterpreted the “concurred in” clause of the KCATA

Compact in that the MHRA is complementary or parallel to KAAD and does not

impose an impermissible unilateral burden on KCATA, and, therefore, the “concurred

in” clause does not preclude application of the MHRA to KCATA. We disagree.

 Kansas and Missouri entered the Compact that created the bi-state agency,

the KCATA. Section 238.010 RSMo (1965) and section K.S.A. 12-2524 (1982). The

KCATA was created for operation of a public transit system in the states of Kansas

and Missouri. Kansas City Area Transp. Authority v. Ashley, 478 S.W.2d 323, 324

(Mo. 1972). In section 238.010, art. 3, section 11, the KCATA Compact provides that

the KCATA shall have the power: “To perform all other necessary and incidental

functions; and to exercise such additional powers as shall be conferred on it by the

Legislature of either State concurred in by the Legislature of the other and by Act

of Congress.” (Emphasis added).

 The Compact Clause (“the Clause”) of the U.S. Constitution permits
 states to enter into interstate compacts pursuant to congressional
 approval. U.S. Const. art. I, § 10, cl. 3. Interstate compacts “represent
 a political compromise between states, not a commercial transaction.”
 KMOV TV, Inc. v. Bi-State Dev. Agency of the Missouri-Illinois Metro.
 Dist., 625 F.Supp.2d 808, 810 (E.D. Mo. 2008). Bi-state entities created
 pursuant to the Clause are unique because three separate sovereigns
 are involved—the federal government and two states. Hess v. Port
 Authority of Trans-Hudson Corp., 513 U.S. 30, 41, 115 S.Ct. 394, 130
 L.Ed.2d 245 (1994). It is the nature of interstate compacts they “shift[ ]
 a part of a state's authority to another state or states, or to the agency
 the several states jointly create to run the compact.” KMOV, 625

 6
 F.Supp.2d at 810. In a bi-state compact, one state may not enact
 legislation that unilaterally imposes burdens upon the compact “absent
 the concurrence of the other signatories.” Bi-State Dev. Agency of the
 Missouri-Illinois Metro. District v. Dir. of Revenue, 781 S.W.2d 80, 82
 (Mo. banc 1989). There is no consensus amongst courts over the
 meaning of “concurrence.” The majority view is the “application of
 states' laws to the compact [is proper only] if the states' legislation
 contains an express statement that they intend to amend the compact.”
 KMOV, 625 F.Supp.2d at 812; see also Malverty v. Waterfront Comm'n
 of New York Harbor, 71 N.Y.2d 977, 529 N.Y.S.2d 67, 524 N.E.2d 421
 422 (1988) (holding only legislation with the express legislative approval
 of the other state may affect the compact).
Jordan, 561 S.W.3d at 60. However, “Missouri is in the minority of states which, in

limited circumstances, allows an interstate compact to be subject to one state’s

legislation without the express concurrence of the other state.” Id.

 In Redbird Engineering Sales, Inc. v. Bi-State Development Agency of Missouri-

Illinois Metro. Dist., 806 S.W.2d 695, 698-701 (Mo. App. E.D. 1991), the court

analyzed whether Missouri’s public works bond statute unilaterally imposed an

impermissible burden on the bi-state agency created by an interstate compact

between the states of Missouri and Illinois. There, the Eastern District adopted the

“complementary or parallel” standard to determine when it is permissible for the

legislation of one signatory of an interstate compact to affect the compact.2 Id. at 701.

 2The majority view is referred to by the parties as the “New York approach” and the minority

view, adopted by Missouri per the Eastern District in Redbird, as the “New Jersey approach.” The
New Jersey approach which utilizes the complementary or parallel standard, is less stringent as the
New York approach requires express approval of legislation to burden the compact. Jordan, 561
S.W.3d at 60. The parties acknowledge that our courts have applied the New Jersey approach using
the complementary or parallel standard in Redbird, Jordan, Emsweller. Nonetheless, the KCATA
includes a footnoted argument that it preserves its argument that Missouri should apply the New York
approach while conceding “it makes no difference for purposes of this appeal.” The KCATA claims
that because an interstate compact approved by Congress is a federal law, the local federal trial courts’
adoption of the New York approach, citing KMOV TV, 625 F.Supp.2d at 810 and Nebraska ex rel.
Nelson v. Central Interstate Low-Level Radioactive Waste Comm’n, 902 F.Supp. 1046 (D. Neb. 1995),
should be followed by Missouri courts. However, this argument fails in that more recently, the local

 7
Redbird recognized that “one party to an interstate compact may not enact legislation

which would impose burdens upon the compact absent the concurrence of other

signatories.” Id. However, Redbird found the “the corollary of that proposition is

that the agency may be made subject to complementary or parallel state legislation

[of the other state].” Id.

 In applying the complementary or parallel standard, the Redbird court found

that Missouri and Illinois had complementary public works bond statutes which were

strikingly similar requiring the bonding of public works contractors and that

precedent in both states similarly concluded that the statutory bond requirement for

public works should be liberally construed. Id. The Redbird court concluded, “Since

the legislation in both states is for all intents and purposes identical insofar as our

inquiry is concerned, and the courts of each state are in accord as to the construction

of their respective acts, we disagree with the trial court’s final conclusion that any

imposition of liability for the commissioners’ failure to require the statutory bond on

this project would have imposed an impermissible, unilateral burden.” Id. at 702.

 More recently, in Jordan, Appellant, an African-American female, was

employed as a bus driver for Bi-State, an entity created by an interstate compact

between Missouri and Illinois. Id. at 58. Appellant brought an action against Bi-

State alleging sexual harassment and retaliation by her supervisor. Id. at 58-59. Bi-

State filed a motion to dismiss for failure to state a claim upon which relief may be

federal trial court followed Jordan expressly agreeing with its rationale, which utilized the New Jersey
approach in Gustafson v. Bi-State Development Agency of Missouri-Illinois Metro. Dist., 361 F.Supp.3d
917 (E.D. Mo. 2019). Regardless, we are not compelled to follow the federal trial court’s opinion.

 8
granted, which the trial court granted. Id. at 59. On appeal, Appellant asserted the

trial court erred in dismissing her petition because the MHRA and the Illinois Human

Rights Act (“IHRA”) are complementary or parallel laws. Id.

 The Eastern District found Redbird instructive on the application of the

complementary or parallel standard while also noting it did not provide a bright-line

test. Id. at 60. The Jordan court stated, “Redbird does not explicitly state that the

phrases ‘for all intents and purposes identical’ or ‘the courts of each state are in accord

as to the construction of their respective acts’ constitute a bright-line test for whether

legislation is complementary or parallel[.]” Id. The Jordan court further noted that

Redbird does not “otherwise provide significant guidance on the proper application of

the standard.” Id.

 In applying the complementary or parallel standard, the Eastern District

noted that the MHRA and the Illinois Human Rights Act (“IHRA”) are similar on a

general level as both address employment discrimination and retaliation claims. Id.

at 61. However, the Court held that when the Appellant’s claims accrued, the MHRA

and the IHRA had different burdens of proof and, as such, were not complementary

or parallel. Id. The court stated, “When Appellant filed her petition, the standard

for MHRA claims was whether discrimination was a ‘contributing factor’3 in the

 3On August 28, 2017, the MHRA was amended and its standard for assessing claims of
discrimination changed from the “contributing factor” standard to the “motivating factor” standard.
Bram v. AT&T Mobility Services, LLC, 564 S.W.3d 787, 794 (Mo. App. W.D. 2018); section 213.010 (2),
(6), (19) RSMo (2017). The new standard under the MHRA is analogous to the one used in employment
discrimination claims under federal law, but does not apply retroactively to discriminatory conduct
alleged prior to the amendment. Id. at 794-96. Because Banks filed the instant case on February 27,
2017, and the discriminatory conduct is alleged to have occurred prior to August 2017, the pre-
amendment MHRA standard applies for assessing Banks’ claims of discrimination.

 9
challenged employment decision(s)” but “under the IHRA, an employee must prove

discrimination was the ‘motivating factor[.]’” Id. at 61.

 [T]he broadening of potential liability introduced by the contributing
 factor standard belies the notion that that MHRA and IHRA are
 ‘complementary.’ The contributing factor standard increased the risk of
 an employer incurring liability for employment discrimination in
 Missouri. It increased the burden placed on employers. The increased
 burden on employers cannot be deemed ‘complementary’ because the
 IHRA had fixed a higher burden of proof for the same type of claim.

Id.

 The Eastern District concluded that as a result of the different burdens of

proof, the MHRA imposed a burden on Bi-State that the IHRA did not. Id. In

rejecting Appellant’s assertion that the different burdens of proof are not meaningful

in a jury trial, the court stated, “With differing burdens of proof the MHRA and IHRA

are not identical for all intents and purposes.” Id. The court further noted that unlike

Redbird, judicial accord was not present. Id. The court concluded, “In sum, the

increase in potential employer liability that accompanied the different burdens of

proof under the MHRA and IHRA imposed an impermissible unilateral burden on Bi-

State. Therefore, the acts were not complementary or parallel under Redbird.

Respondents are not subject to suit under the MHRA.” Id at 62.

 Likewise, in Emsweller, the Eastern District followed its holding in Jordan in

finding Bi-State, as an interstate compact, could not be sued under the MHRA. 591

S.W.3d at 500. There, Appellant was employed by Bi-State as a service manager in

its Call-A-Ride Division. Id. at 497. Appellant voiced his belief to his supervisors

that Bi-State’s practice of refusing transport service to certain locations for Medicaid

 10
riders was discriminatory of African-American riders. Id. Shortly thereafter,

Appellant was terminated from employment. Id. Appellant filed a petition against

Bi-State alleging his termination violated the MHRA. Id. After the Jordan decision

was issued, Bi-State filed a motion for judgment on the pleadings asserting the

interstate compact defense, which the trial court granted. Id. On appeal, the Eastern

District affirmed citing Jordan in finding Bi-State is not subject to suit under the

MHRA as the statutes existed prior to the 2017 amendments. Id. at 499-500.

 The holdings of Redbird, Jordan, and Emsweller are instructive as to the

application of the complementary or parallel standard to the present case. Here, like

Jordan and Emsweller, when Banks’ claims accrued, the MHRA and KAAD had

different burdens of proof, and, thus were not complementary or parallel. Banks filed

his petition under the MHRA against the KCATA, a bi-state entity created by an

interstate compact. Banks’ action accrued prior to the 2017 amendments of the

MHRA and, thus, the contributing factor standard for MHRA claims applies. Like

the IHRA in Jordan, under KAAD, an employee must prove discrimination was the

motivating factor. Beech Aircraft Corp. v. Kansas Human Rights Com’n, 864 P.2d

1148, 1151 (1993) (The KAAD utilizes the burden-shifting framework set forth in

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)); Templemire v. W & M

Welding, Inc., 433 S.W.3d 371, 383 (Mo. banc 2014) (Kansas follows the McDonnell

Douglas burden shifting framework which is “commonly referred to as the ‘motivating

factor’ analysis.”). Accordingly, the analysis in Jordan applies here.

 [T]he broadening of potential liability introduced by the contributing
 factor standard belies the notion that that MHRA and [KAAD] are

 11
 ‘complementary.’ The contributing factor standard increased the risk of
 an employer incurring liability for employment discrimination in
 Missouri. It increased the burden placed on employers. The increased
 burden on employers cannot be deemed ‘complementary’ because the
 [KAAD] had fixed a higher burden of proof for the same type of claim.

Jordan, 561 S.W.3d at 61. As a result of the different burdens of proof, the MHRA

imposes a burden on KCATA that the KAAD does not. The different burdens of proof

render the acts not identical for all intents and purposes. The increase in potential

employer liability that accompanies the different burdens of proof under the MHRA

and the KAAD imposes an impermissible unilateral burden on KCATA. Accordingly,

the acts were not complementary or parallel under Jordan or Redbird and the

KCATA is not subject to suit under the MHRA.

 Under Jordan, the different burdens of proof in the Missouri and Kansas anti-

discrimination statutes is sufficient to find the KCATA is not subject to the MHRA.

However, we note the MHRA and the KAAD are also different in that the pre-2017

amendments MHRA allowed punitive damages, which Banks sought, and did not

employ a cap on damages, whereas the KAAD did not allow punitive damages and

employed a cap on damages. See section 213.111.1;4 K.S.A. 44-1005(k) (2004)

(compensatory damages for pain, suffering, and humiliation capped at $2,000); Brady

v. Curators of University of Mo., 213 S.W.3d 101, 107 (Mo. App. E.D. 2006); Dixson v.

Mo. Dep’t of Corrections, 586 S.W.3d 816, 824 (Mo. App. W.D. 2019) (The 2017

amendments set a cap on damages codified in section 213.111.4). As a result, the

 4
 Unless otherwise indicated, all statutory citations are to RSMo (2000) as updated by supplement through
2015.

 12
MHRA further imposes an impermissible unilateral burden on the KCATA beyond

what was found sufficient in Jordan.5

 Banks argues the trial court erred in relying on Jordan and Emsweller as they

were wrongly decided because neither addressed that Bi-State is not designated as a

political subdivision of Missouri and, therefore, “it appears that Bi-State could not

fall within the MHRA’s definition of “employer” rendering any complementary or

parallel discussion irrelevant because “Bi-State could not have been subject to the

MHRA anyway.” This argument fails because even were we to find that Bi-State was

not subject to the MHRA for an additional reason, which we are not, it does not negate

the Eastern District’s complementary or parallel analysis.

 Banks argues the Jordan and Emsweller courts misapplied the complementary

or parallel standard by incorrectly relying on Redbird for the “identical for all intents

and purposes” interpretation of the standard. Banks mischaracterizes the Eastern

District’s analysis in Jordan. As discussed supra, the Jordan court expressly stated

that Redbird did not provide a bright-line test. While the Jordan court found that

the different burdens of proof rendered the MHRA and the IHRA not identical for all

intents and purposes, that was only one piece of the court’s analysis. The Jordan

court also found that the difference in burdens of proof belies the notion that the

MHRA and the IHRA were complementary or parallel and that there was no judicial

 5Banks relies on New Jersey cases which hold that the “complementary or parallel” standard

is satisfied if the corresponding statutes in the compacting states are “substantially similar.” See, e.g.,
Ballinger v. Del. River Port Auth., 800 A.2d 97, 101-02 (N.J. 2002); Santiago v. N.Y. & N.J. Port Auth.,
57 A.3d 54, 58 (N.J. Super. App. Div. 2012). None of the Missouri cases addressing Compacts Clause
issues have expressly adopted the “substantially similar” test. But even if it applied, it would not be
satisfied here, given the significant substantive differences between the pre-2017 MHRA and the
KAAD.

 13
accord. Moreover, the Jordan court did not make a pronouncement that the

complementary or parallel standard means identical for all intents and purposes.

 Furthermore, to the extent Banks relies on a denial of a writ of prohibition by

this court in State ex rel. Kansas City Area Trans. Auth. v. Fahnestock, No. WD81500,

(Mo. App. W.D. February 15, 2018), to support this argument, that argument fails

because “[t]he mere denial of a petition for writ of prohibition where the appellate

court issues no opinion is not a conclusive decision on the merits of the issue

presented.” Rodriguez v. Suzuki Motor Corp., 996 S.W.2d 47, 61 (Mo. banc 1999).

Notably, both the underlying circuit court judgment prompting the petition for writ

of prohibition and this court’s order denying the petition pre-date Jordan and

Emsweller.

 Banks cites New Jersey authority for his argument that where the legislation

is not complementary, the court must determine whether the bi-state agency

impliedly consented to unilateral state regulation. While we are not bound by New

Jersey authority, Banks’ argument that the KCATA impliedly consented to the

MHRA fails. In support of this argument, Banks argues that the KCATA admitted

it was an employer under the MHRA in several lawsuits brought against the KCATA

however, the admissions were made in answers that pre-dated Jordan and

Emsweller. However, Banks fails to cite any authority in support of his conclusion

that these admissions can be treated as implied consent to the application of the

MHRA. “Appellants have the obligation to cite to appropriate and available legal

precedent to support their points-relied-on.” Chipperfield v. Mo. Air Conservation

 14
Com’n, 229 S.W.3d 226, 238 (Mo. App. S.D. 2007). “Failure to cite the law or explain

the absence of the law preserves nothing for review.” Id.

 Finally, we reject Banks’ argument that the KCATA’s agreement with Local

1287, Amalgamated Transit Union demonstrates its implied consent to the MHRA.

The agreement to follow all applicable laws does not provide implied consent that all

laws are applicable to the KCATA.

 Accordingly, we find the trial court did not err in granting KCATA’s motion to

dismiss for failing to state a claim upon which relief may be granted as the MHRA

and the KAAD are not complementary or parallel and, as such, the MHRA imposes a

impermissible unilateral burden on the KCATA.

 Point II is denied.

Point I
 In Point I, Banks makes an alternative argument to Point II, that the Compact

does not preclude the application of the MHRA to the KCATA because matters of

employment discrimination are not within the scope of the Compact. Banks relies on

the unmistakability doctrine for his argument that because the Compact is silent as

to employment discrimination, there is nothing precluding the participating states

from legislating on matters of employment discrimination. We disagree that the

unmistakability doctrine applies because the unmistakability doctrine has never

been recognized by Missouri courts in any context; and even in jurisdictions that

recognize the unmistakability doctrine, it has not been applied to a similar compact,

 15
where the issue concerns whether the laws of one of the compacting states can be

applied to an entity created by the compact itself.6

 The unmistakability doctrine “provides that when the government enters into

a contract with a private person, the government can change the law, notwithstanding

the contract, unless there is an unmistakable promise not to act.” Construction and

Application of Unmistakability Doctrine, 16 A.L.R.7th Art. 1 (2016) (emphasis added).

It “‘is a rule of contract construction that provides the sovereign powers of a state

cannot be contracted away except in unmistakable terms.’” Kimberly-Clark Corp. &

Subsidiaries v. Commissioner of Revenue, 880 N.W.2d 844 (Minn. 2016) (citation

omitted); U.S. v. Winstar Corp., 518 U.S. 839, 871-74 (1996)). It “‘provides that

contracts limiting the government’s future exercise of regulatory authority must be

expressed in unmistakable terms.’” U.S. v. Westlands Water Dist., 134 F.Supp.2d

1111, 1145 (E.D. Cal. 2001) (citation omitted).

 As previously stated, Missouri courts have never recognized the

unmistakability doctrine, a fact which Banks’ fails to acknowledge or address.

Moreover, no case in any jurisdiction suggests that it applies in the instant case. The

unmistakability doctrine has been utilized in other jurisdictions where the

government enters a contract with a private person or business and the analysis is

whether the unmistakability doctrine bars contentions that the government could not

act. For example, the doctrine has been raised where government contractors or

 6To further demonstrate the limited application of the unmistakability doctrine, a search for

the unmistakability doctrine across all state courts returned only 27 cases in which it was referenced
in only 11 states.

 16
employees contend that the government could not reduce or limit salaries or

compensation. See Rhode Island Broth. of Correctional Officers v. Rhode Island, 357

F.3d 42 (1st Cir. 2004); Rhode Island Laborers' Dist. Council v. State of R.I., 145 F.3d

42 (1st Cir. 1998). It has also been raised where government employees contend the

government could not change governmental pension and retirement contributions,

rates, or payments. See Taylor v. City of Gadsden, 767 F.3d 1124 (11th Cir. 2014);

Justus v. State, 336 P.3d 202 (Colo. 2014). The doctrine has also been raised by

individuals challenging the governments ability to change the rules applicable to

subsidized low-cost housing programs. See Grass Valley Terrace v. U.S., 46 Fed. Cl.

629 (2000), Kimberly Associates v. U.S., 261 F.3d 864 (9th Cir. 2001). The doctrine

has also been raised by private parties that have entered into contracts with the

government for timber, mining and other natural resource development. See U.S. v.

Westlands Water Dist., 134 F. Supp. 2d 1111 (E.D. Cal. 2001). These cases

demonstrate that in jurisdictions where the unmistakability doctrine is recognized,

it applies where the government contracts with a private person or business.

 Here, the government did not enter into a contract with private person or party

but with another government. The contract, the Compact, is between Missouri and

Kansas. There is no authority that supports Banks’ argument that the

unmistakability doctrine applies in this case, even if Missouri recognized it.

 Banks cites Kimberly-Clark Corp. & Subsidiaries v. Commissioner of Revenue,

2015 WL 3843986 (Minn. Tax Ct. Regular Div. 2015), to support his assertion that

the unmistakability doctrine applies to interstate compacts. There, it was held that

 17
the unmistakability doctrine applied to a taxpayer’s claim regarding Minnesota’s

amendment of its enactment of the Multistate Tax Compact. However, the Multistate

Tax Compact is not analogous to the Compact. The Multistate Tax Compact was

drafted by subcommittee on state taxation of interstate commerce established by

Congress to propose legislation providing uniform standards to be observed by the

States in imposing income taxes on income derived from interstate commerce. Id. at

2. Any State was free to enact the Multistate Tax Compact.

 In contrast, the Compact in the instant case was entered into between two

states and created a bi-state entity, not an adoption of laws on one subject matter.

The court in Kimberly-Clark, utilized the unmistakability doctrine in interpreting the

terms of the Multistate Tax Compact. Unlike Kimberly-Clark, the Compact did not

adopt a set of uniform laws and, therefore, the analysis is not a matter of contract

interpretation. Instead, it is a matter of whether each states’ laws will impose a

unilateral impermissible burden on the Compact, as discussed in Point II.

 Banks also cites Tarrant Reg’n Water Dist. v. Herrmann, 569 U.S. 614 (2013),

which involved an interstate compact allocating water rights among Oklahoma,

Texas, Arkansas and Louisiana within the Red River basin. Like, Kimberly-Clark,

the unmistakability doctrine was used in interpreting the terms of the compact and

not comparable to the analysis in the present case. Id. at 631-33.

 The proper inquiry is set forth in our analysis of Point II, whether the

legislation of one state unilaterally burdens the compact entity without the

concurrence of the other state.

 18
 Point I is denied.

Point III
 In Point III, Banks claims the trial court erred in granting the KCATA’s motion

to dismiss his Petition because the dismissal was improperly based on an unpleaded

affirmative defense. We disagree.

 Banks argues the trial court found “the Petition failed to allege facts

establishing the state of Kansas, a party to the compact, has concurred in having the

MHRA apply to the KCATA,” citing KMOV TV, 625 F.Supp.2d at 812, but that Banks

was not required to do so. Banks relies on a characterization the federal court made

in its order granting Banks’ motion to remand the matter back to state court finding

the Petition did not allege facts raising a federal question and the presence of an

affirmative defense is insufficient to confer federal question jurisdiction. In that

order, the federal court stated that the KCATA’s argument is “akin to an affirmative

defense because the KCATA’s compact argument could defeat Banks’ claim even if

Banks proves every element of h[is] causes of action.” Banks claims we are bound by

the federal court’s determination that the KCATA’s argument is akin to an

affirmative defense as the law of the case and, accordingly, the KCATA was required

to set forth its argument in a pleading to a preceding pleading as required by Rule

55.08.

 Rule 55.08 provides, in pertinent part: “In pleading to a preceding pleading, a

party shall set forth all applicable affirmative defenses and avoidances[.] . . . A

pleading that sets forth an affirmative defense or avoidance shall contain a short and

plain statement of the facts showing that the pleader is entitled to the defense or

 19
avoidance.” However, Rule 55.27(a)(6) provides that every defense to a claim asserted

in a pleading must be asserted in a responsive pleading except for a limited set of

defenses, including failure to state a claim upon which relief can be granted, that may

(at the option of the pleader) be asserted by motion. Thus, “[a] narrow exception to

the pleading requirement exists whereby the defendant may file a motion to dismiss

for failure to state a claim under Rule 55.27(a)(6) when it appears from the face of the

petition that an affirmative defense is applicable.” Murray-Kaplan v. NEC Ins., Inc.,

617 S.W.3d 485, 494 (Mo. App. E.D. 2021). “Such a motion may be granted only where

the affirmative defense is ‘irrefutably established’ by the face of the petition itself.”

Id.

 Here, the KCATA filed a motion to dismiss for failure to state a claim upon

which relief may be granted. Even if the Compacts Clause issue were treated as an

affirmative defense, the motion was properly granted as KCATA’s exemption from

the MHRA’s coverage was established on the face of the Petition in light of the

holdings in Jordan and Emsweller. Per the Petition, Banks brought his actions for

unlawful discrimination and retaliation pursuant to the MHRA; Banks was employed

by KCATA, a bi-state agency created pursuant to the Compact between Kansas and

Missouri; and the Compact gives the KCATA powers conferred on it by the legislature

of either state concurred in by the legislature of the other. Once the opinions in

Jordan and Emsweller were issued, no additional facts were needed, and the motion

to dismiss for failure to state a claim was irrefutably established by the face of the

Petition. Jordan and Emsweller established that Missouri applied the

 20
complementary or parallel standard to determine whether a state concurred in the

other state’s law and that contributing factor and motivating factor burdens of proof

were sufficiently different as to not qualify as complementary or parallel. Thus, a

comparison of the burdens of proof between the MHRA and the KAAD required no

additional facts to conclude that they were not complementary or parallel in that the

KAAD utilizes the motivating burden of proof like the Illinois statute in Jordan.

Thus, as a matter of law, the Petition failed state a claim upon which relief may be

granted and the trial court did not err in granting said motion.

 Point III is denied.

Points IV and V
 In Points IV and V, Banks claims the trial court erred and/or abused its

discretion in granting the KCATA’s motion to dismiss because the KCATA should be

judicially and equitably estopped from denying that it is subject to the MHRA due to

its previous admissions in prior litigation that it was an “employer” within the

MHRA’s definition of the term. We disagree.

 Standard of Review

 “To the extent this [c]ourt is determining the purely legal question of what

factors must be shown to invoke judicial estoppel, the standard of review is de novo.”

Vacca v. Mo. Dep't of Labor and Indus. Relations, 575 S.W.3d 223, 230 (Mo. banc

2019). “To the extent this [c]ourt is reviewing the circuit court's discretionary

application of judicial estoppel to the facts of the case, the standard of review is an

abuse of discretion.” Id. “‘A ruling constitutes an abuse of discretion when it is

‘clearly against the logic of the circumstances then before the court and is so

 21
unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of

careful, deliberate consideration.’” Stephen W. Holaday, P.C. v. Tieman, Spencer &

Hicks, L.L.C., 609 S.W.3d 771, 780 (Mo. App. W.D. 2020) (citation omitted).

 Analysis

 “[J]udicial estoppel is not a cause of action with elements that must be proven

and that are prerequisites to its application.” Vacca, 575 S.W.3d at 235. Rather,

judicial estoppel “is a flexible, equitable doctrine intended to preserve the integrity of

the courts.” Id. “All factors that are relevant should be considered by the Court, but

once a party takes truly inconsistent positions, there are no inflexible prerequisites

or an exhaustive formula for determining the applicability of judicial estoppel.” Id.

Factors to consider include: (1) a party’s later position is clearly inconsistent with its

earlier position; (2) whether the party was successful in persuading a court to accept

the party’s earlier position such that judicial acceptance of an inconsistent position

in a later proceeding would create the perception that a court was misled; and (3)

whether the party seeking to assert an inconsistent position would derive an unfair

advantage or impose an unfair detriment on the opposing party if not estopped. Id.

at 232-233. These factors “are guideposts, not elements, intended to assist courts in

identifying when judicial estoppel should be applied to preserved the integrity of the

judicial process and prevent litigants from playing ‘fast and loose’ with the courts.”

Id. at 236.

 Equitable estoppel requires the party asserting it establish the following

elements: (1) an admission, statement, or act inconsistent with the claims afterwards

 22
asserted and sued upon; (2) action by the other party on the faith of the admission,

statement or act; and (3) injury to the other party from allowing the first party to

contradict or repudiate the admission, statement or act. Bi-State Development

Agency of Missouri-Illinois Metro. Dist. v. Warren, 581 S.W.3d 654, 665 (Mo. App.

W.D. 2019); Ditto, Inc. v. Davids, 457 S.W.3d 1, 17 (Mo. App. W.D. 2014). “‘Equitable

estoppel arises from the unfairness of allowing a party to belatedly assert known

rights on which the other has, in good faith, relied thereby and become

disadvantaged.’” Ditto, 457 S.W.3d at 17 (citation omitted).

 The basis for Banks’ argument for both forms of estoppel is that the KCATA

admitted in prior litigation that it was an “employer” within the definition of the term

under the MHRA and equates that to an admission that it was subject to the MHRA.

Banks claims the KCATA’s current position, that it is not subject to the MHRA, is

therefore, inconsistent with its previous admission; that the court in the previous

litigation was misled into believing that the KCATA was subject to the MHRA; and

by now asserting that it is not subject to the KCATA, is imposes an unfair detriment

on Banks because he will be left without any remedy.

 Banks’ argument fails to demonstrate that judicial or equitable estoppel is

appropriate under these circumstances. There was not a misleading of a court or a

belated assertion of known rights. Here the change in position occurred in response

to the Eastern District’s holdings in Jordan and Emsweller. The previous admissions

were made prior to these holdings. Moreover, an admission that the KCATA came

within MHRA’s definition of employer does not amount to an admission that the

 23
KCATA is subject to the MHRA. MHRA defines “employer” as “includes the state, or

any political or civil subdivision thereof.” Article III of the Compact names the

KCATA a political subdivision. Section 213.101(7). An admission that KCATA was

an employer under this definition admits nothing about whether or not it is subject

to the MHRA. Nonetheless, even assuming the KCATA admitted it was subject to

the MHRA in previous litigation, the change in their position was due to the holdings

in Jordan and Emsweller and, as such, was not done in an attempt to play “fast and

loose” with the courts. Vacca, 575 S.W.3d at 236. It is simply a matter of the Eastern

District stating that the MHRA is not applicable. Jordan, 561S.W.3d at 62;

Emsweller, 591 S.W.3d at 500. The trial court did not abuse its discretion in failing

to apply judicial or equitable estoppel.

 Points IV and V are denied.

 Conclusion

 We affirm the trial court’s judgment.7

 __________________________________________
 W. DOUGLAS THOMSON, JUDGE
All concur.

 7
 During the pendency of this appeal, the KCATA filed a motion to strike a portion of Banks’ appendix as it
includes a collective bargaining agreement (“CBA”) between Local 1287, Amalgamated Transit Union and the
KCATA that was not part of the record below, has not been authenticated, and may not be included in Banks’
appendix. The motion to strike is rendered moot by this opinion.

 24